GEORGE W. COURTNEY et al., Trustees of H. Clay Tunis *vs.* WILLIAM KNABE & CO. MANUFACTURING COMPANY.

*Letter Confirming Previous Contract—Evidence—When Judgment in a Replevin Suit Not Res Adjudicata as to Ownership—False Statement Made to Mercantile Agency—When Party Obtaining Goods by Fraud Cannot Enforce Payment From His Vendee—When Purchase by an Insolvent is Fraudulent—False Statements Made by an Agent— Rescission of Sale for Fraud.*

A letter from a vendor to the buyer stated that the former confirmed a sale of certain designated quantities of lumber on terms of payment also mentioned. The buyer answered by saying that the letter was correct as to quantities, terms, etc. *Held*, that these letters do not constitute the entire contract of the parties, but refer to a sale previously agreed upon and that consequently evidence is admissible to show that the buyer had the right, under the agreement as actually made, to inspect the lumber after delivery before paying for it, and to reject such part as did not conform to the specifications of the contract.

A judgment for the defendant in a replevin suit, but which does not order the return of the property, does not conclusively determine that the property replevied was owned by the defendant and make that question *res adjudicata* in a subsequent suit relating to the same property, because such judgment could have been rendered upon a finding that the property was not then in the possession of the defendant, or that the plaintiff had not at that time the right to the possession, or because the right of possession was then in a third party.

False statements concerning his financial condition and solvency made by a party to a Mercantile Agency with the intent that the same should be communicated to persons dealing with him and which, being communicated to plaintiff, induce him to give credit to such party, are competent evidence to prove fraud, since such representations are to be considered as if made directly to the plaintiff.

One who obtains possession of goods by perpetrating a fraud upon the owner and then delivers them to a third party under a contract of sale, is not entitled to enforce payment of the price by the third party when the goods have been taken from him by the original defrauded owner.

When the buyer at the time of making a purchase on credit is insolvent, and knows that he is insolvent, and has no reasonable expectation of being able to pay for the goods, he is guilty of fraud and the contract is voidable.

When an agent is authorized to make purchases on credit, representations made by him as to the solvency of his principal are binding upon the latter.

By means of fraudulent representations as to his solvency A. obtained from B. possession of a quantity of mahogany under a contract of sale on credit. A. then agreed to sell the mahogany to the defendant under a contract which gave the defendant the right to inspect it after delivery and to reject such part as was not in accordance with the specifications of their agreement. The lumber was delivered to the defendant but he refused to accept, alleging that its quality was not as specified. While the lumber was on the defendant's premises, subject to future adjustment, A. defaulted in his payment to B. and the latter, discovering the former's fraud, rescinded his sale to A. and brought an action of replevin for the mahogany. The lumber was seized under the writ and delivered to B. The defendant in this replevin suit was A. and not this defendant in whose possession the property really was. The trial of that suit resulted in a judgment for the defendant therein because he was not in possession of the property, but there was no order for a return of the goods. B. then sold the same lumber to the defendant. This action was brought by the assignees for the benefit of the creditors of A. to recover the price of the lumber sold as aforesaid by A. to the defendant. *Held*, that the plaintiffs are not entitled to recover because the contract by which their assignor had obtained possession of the goods having been avoided by B. for fraud and the goods having been actually taken by him, the defendant's liability to A. was at an end.

*Held* further, that the judgment in the replevin suit does not estop the defendant from showing that the lumber is not the property of A. and that the original purchase by him was fraudulent and had been avoided by B.

Appeal from the Superior Court of Baltimore City (WRIGHT, J.)

*Plaintiff's 3rd Prayer.*—That the verdict and judgment of this Court in the replevin suit of *William E. Uptegrove & Bro., a corporation,* v. *H. Clay Tunis,* the record of which has been offered in evidence in this case, establish conclusively that the mahogany lumber replevied in that case was not the property of the said William E. Uptegrove & Bro., and that they had no right to take the same ; and that the said mahogany lumber was at the date of the issuing of the writ in the said replevin suit the property of William Knabe & Company Manufacturing Company, a corporation, the defendant in this case,

under and subject to the terms and conditions of the contract of sale set forth in the letter from the said H. Clay Tunis to the said William Knabe & Company Manufacturing Company, dated July 2nd, 1900, and the letter in reply thereto dated July 6th, 1900, from the said William Knabe & Co. Mfg. Company to the said H. Clay Tunis, both of which were of-fered in evidence in this case ; provided the jury shall further find that the contract was made by the letters as aforesaid. (*Rejected.*)

*Plaintiff's 4th Prayer.*—If the jury find from the evidence that after the sale and delivery of the lumber by William E. Uptegrove & Bro. to H. Clay Tunis (if the jury finds there was said sale), H. Clay Tunis sold part of the lumber to the defendants, and further find that the defendants were *bona fide* purchasers thereof for value, and that every part thereof was delivered to and accepted by the defendants, and that there is due and owing on account of the purchase of said lumber any part of the price thereof, and that the plaintiffs are the duly appointed and qualified trustees of the estate of H. Clay Tunis, and have made demand for payment of said pur-chase-money of the defendants, and that the same has been refused, then the plaintiffs can recover in this case, even though the jury shall further find that William E. Uptegrove & Bro. were fraudulently induced to sell and deliver said lum-ber to H. Clay Tunis.  (*Rejected.*)

*Plaintiffs' 5th Prayer.*—That the verdict and judgment o this Court in the replevin suit of *Wm. E. Uptegrove & Bro.*, *a corporation*, v. *H. Clay Tunis*, the record of which, together with the evidence taken therein have been offered in evidence in this case, establish conclusively that the mahogany lumber replevied in that case was not the property of the said Wm. E. Uptegrove & Bro., and that they had no right to take the same ; and that the said mahogany lumber was at the time of the issuing the writ in the said replevin suit the property of the defendants in this case, under and subject to the terms and conditions of the contract of sale set forth in the letter from the said H. Clay Tunis to the said defendants dated July

2nd, 1900, and the letter in reply thereto from the defendants
to the said H. Clay Tunis dated July 6th, 1900, both of
which were offered in evidence in this case.    And if the jury
shall further find from the evidence in this case that the lum-
ber in respect to which this action was brought was the same
lumber which was the subject-matter of the said replevin suit,
and shall further find from the evidence in this case that said
lumber was replevied while in the possession of the William
Knabe & Company Manufacturing Company, the defendants
in this case, and that or before the time the writ of replevin in
the said suit was served, the said William Knabe & Co. Man-
ufacturing Company knew of the alleged claim of Wm. E. Up-
tegrove & Bro. thereto, and entered into an agreement with
the said William E. Uptegrove & Bro. relative to the said lum-
ber whereby the defendants assisted said William E. Upte-
grove & Bro. in the prosecution of their said replevin suit to
obtain possession of said lumber, then if the jury shall so find,
the defendants are bound by the judgment in the said replevin
suit as fully and to the same effect as if they had been defend-
ant thereto.    (*Rejected.*)

*Plaintiffs' 6th Prayer.*—That there is no evidence in this case
legally sufficient to prove that the purchase of the lumber re-
ferred to in the evidence by H. Clay Tunis from Wm. E. Up-
tegrove & Bro. was fraudulent on the part of the said Tunis;
and if the jury find that the said lumber was purchased by the
said Tunis and was delivered to him by said William E. Up-
tegrove & Bro., and shall further find that the said Tunis
passed to the said William E. Uptegrove & Bro. his six promis-
sory notes therefor on the 12th day of June, 1900, then the
legal title to the said lumber so purchased was thereby vested
in said H. Clay Tunis.    (*Rejected.*)

*Plaintiffs' 7th Prayer.*—That the verdict and judgment of
this Court in the replevin suit of *William E. Uptegrove &
Bro., a corporation,* v. *H. Clay Tunis,* the record of which, to-
gether with the evidence taken therein have been offered in
evidence in this case, establish conclusively that the mahogany
lumber replevied in that case was not the property of the said.

William E. Uptegrove & Bro., and that they had no right to take the same; and if the jury find from the evidence that the lumber returned in the schedule in said replevin suit included the lumber in respect to which this action was brought, then all acts and agreements, if any, which the jury may find from the evidence were entered into between the said William E. Uptegrove & Bro., and the defendants respecting the said lumber in reference to which this action was brought, after the date of the issuing of the writ in the said replevin suit, are altogether void and of none effect as against the plaintiffs in this case. (*Rejected*)

*Plaintiffs' 8th Prayer.*—That if the jury believe from the evidence that the sale of the lumber made by William E. Uptegrove & Bro. to H. Clay Tunis during the month of June, 1900, was made on credit, and that the said Tunis passed his six promissory notes to the said Wm. E. Uptegrove & Bro. in payment therefor, and that the said Tunis at the time of the said sale was insolvent, and knew himself to be so; yet he was under no obligations to disclose such facts to the said William E. Uptegrove & Brother, and such failure to disclose on his part did not constitute the purchase of said lumber fraudulent—and if the jury shall further find that there were no fraudulent representations made by Tunis at or about the time of the said sale which induced said sale—and if the jury shall further find that the said H. Clay Tunis, at the time of purchasing the said lumber had a reasonable expectation based upon his financial condition, his assets then under his control, his former experience as a lumber merchant, the money to be derived from the sale of said lumber at a profit, and from his general business resources then within his reach, of being able to pay his notes aforesaid at their respective maturities, then the said purchase was not fraudulent in character, and the jury is not to consider the question of his ability to meet all his obligations with other persons. But in considering the question whether the said Tunis had a reasonable expectation of being able to comply with the terms of the said purchase in respect to the payment of the purchase price,

as stated in the evidence, the jury may consider his indebtedness to others at that time, as affecting the reasonableness of such expectation. The Court modified this prayer by adding: "And if the jury shall further find that there were no fraudulent representations made by Tunis at or about the time of the said sale which induced said sale." (*Granted as modified.*)

*Defendants' 1st Prayer.*—That if the jury find that Welch was the agent for Tunis, and as such sold the lumber in question to the defendants, subject to inspection by, and the approval of, the latter, and that the said contract was not in writing, and if they find that after a portion of the lumber was delivered in the yard of the defendant further delivery was stopped by the defendant because the lumber was not approved by the defendant, and that the residue of the lumber was allowed to be delivered in the yard of the defendant only as an accommodation to the said Tunis and upon the understanding and agreement that all was to be subject to the inspection and approval of the defendant before acceptance by other defendants; and if they find that before there was any such inspection and approval by the defendant, the lumber was replevied by Uptegrove & Co., and that the defendant had no further dealings with said Tunis respecting said lumber, then the plaintiffs cannot recover on a special contract set up in this case as contained in the letter of July 2nd, 1900, from Tunis to Knabe, and the letter of July 6th, 1900, from Knabe to Tunis. (*Granted.*)

*Defendants' 2nd Prayer.*—If the jury believe that Tunis made the various statements to the mercantile agencies in accordance with the evidence given on that subject in this case by the witnesses Strobbar, Brown and Courtney, and in the manner stated by said witnesses, and if they shall find that said statements were false, and if they further believe that he told the witness Welch that he was worth one hundred thousand dollars as testified to by said witness Welch; and if they further find that said Tunis made said statement to said agencies with the fraudulent intent to use such agencies as a means to deceive persons from whom he might purchase goods on

credit as to his financial condition and made said representa-
tions to said Welch as his agent to purchase goods on credit
(if they shall find that Welch was such agent) with the same
object in view; and if they find that said statements so given
to said agencies by said Tunis, or any of them were sent to
Uptegrove & Bro. before the sale was made to Tunis, and that
said Welch told said Uptegrove & Bro. what Tunis had told
him as to his being worth one hundred thousand dollars, and
that said Uptegrove & Bro. were induced by said statements,
or any of them, and by said representation of Welch to make
the sale and give the credit on the 12th June, 1900, as testi-
fied to in this case, then they are instructed that said Upte-
grove & Bro. were not bound by said sale to said Tunis and
had a right to reclaim the goods so sold, so far as Tunis or
his trustee were concerned, and if the jury believe that the
sale to Knabe & Co. by Tunis was made subject to the ap-
proval or inspection by Knabe & Co. of the goods so sold,
and if they find that as such goods were being delivered at
the yard of Knabe & Company, they, acting by Ernest Knabe,
insisted that the delivery should stop as the goods were not
of the quality represented, and that the residue of the goods
was allowed by Knabe & Company, to be hauled to their
yards subject to their approval and inspection of the entire
lot ; and if they find that before such approval had been given
or said inspection had been made, or before said Knabe & Co.
had paid for said goods, Uptegrove & Bro. issued a replevin
for said goods and seized them, and requested Knabe & Com-
pany to allow them to remain in their yard as a matter of
convenience, then their verdict must be for the defendant.
(*Granted.*)

*Defendant's 3rd Prayer.*—If the jury find that at the time
of the contract of sale between H. Clay Tunis and Wm. E.
Uptegrove & Bro. mentioned in the evidence, the said H. Clay
Tunis was insolvent and knew that he was insolvent, and had
no reasonable expectation of paying for the lumber which was
the subject of said contract of sale, and that said William E.
Uptegrove & Bro. subsequently regained possession of the

said lumber as testified by the defendants' witnesses, then the verdict of the jury must be for the defendant.  (*Granted.*)

*Defendant's 4th Prayer.*—If the jury shall find that, as testified by the witness Robert W. Brown, some time in the fall of 1899 the said Robert W. Brown asked H. Clay Tunis for a statement of his financial condition, telling him that he wanted it for a report to the R. G. Dun & Co. Mercantile Agency, and that said Tunis thereupon told said Brown that his financial condition was the same as it had been on the first of July preceding and directed said Brown to copy the statement of his resources and liabilities of July 1st, 1899, which was set out in one of his (Tunis) books, and said Brown did make such copy and return the same as part of his report to said mercantile agency; and if the jury shall also find that, as testified by said Brown, some time in April or May of 1900, said Brown asked said Tunis for a report of his condition for the use of said mercantile agency, and said Tunis then told said Brown that his condition was fully equal to what it had been when he gave said statement in the preceding fall, and said Brown reported this fact to said mercantile agency; and if the jury shall further find that said H. Clay Tunis prepared said statement of his resources and liabilities on July 1st, 1899, as testified by the witness Courtney, and shall also find that said Tunis knew said statement to be a false and misleading statement of his financial condition and directed said Robert W. Brown to report the same, as above set forth, to said R. G. Dun & Co., as a true statement of his financial condition and that said Tunis did this for the false and fraudulent purpose of getting said R. G. Dun & Co. to represent to their customers that he, said Tunis, was a man of large means and entitled to large credit; and if the jury shall further find that, as testified by the witness Jerome P. Uptegrove, in the latter part of May, 1900, Wm. E. Uptegrove & Bro., the corporation mentioned in the evidence, applied to said R. G. Dun & Co. for information about the financial responsibility of said H. Clay Tunis and received from said mercantile agency a report containing a copy of said statement of said Tunis' re-

sources and liabilities as of July 1st, 1899; and if the jury shall further find that said Wm. E. Uptegrove & Bro. was induced by said financial statement and the statement of Welch mentioned in the evidence, if they shall find such statement of Welch, to make the sale to said H. Clay Tunis of mahogany lumber mentioned in the evidence; and if the jury shall further find that subsequently said Wm. E. Uptegrove & Bro. regained possession of said mahogany lumber as stated in the evidence then the verdict of the jury must be for the defendant; but the jury are cautioned that in determining these questions they must exclude from their consideration all of any reports furnished by said R. G. Dun & Co. to said Wm. E. Uptegrove & Bro. outside of the matters testified to by said Robert W. Brown as stated to him by said Tunis or obtained from the books of said Tunis by his direction.   (*Granted.*)

*Defendants' 6th Prayer.*—If the jury shall find the following facts :

1.  That the negotiation for the sale from William E. Uptegrove & Bro. to Clay Tunis mentioned in the evidence was conducted by the witness Uptegrove as an officer of said William E. Uptegrove & Bro., on one side and by the witness Welch as manager of said Tunis' hardwood department on the other side.

2.  That said Welch had entered said Tunis' employment less than three months before the beginning of said negotiation and during the period when he was so employed before the purchase from said William E. Uptegrove & Bro., the said Tunis told said Welch that he would have to make purchases on credit and also told said Welch that he, said Tunis, was worth $100,000.

3.  That in reply to a question as to said Tunis' responsibility asked by said Uptegrove in the course of said negotiation, the said Welch stated that said Tunis told him he was worth $100,000.

4.  That by this statement of said Welch said William E. Uptegrove & Bro. was induced to make the sale in question.

5.  That at the time when said Tunis told said Welch that

he was worth $100,000, and also at the time when he made the purchase from said William E. Uptegrove & Bro., said Tunis knew that he was not worth anything like $100,000, but was in fact insolvent or almost insolvent.

6. That in settlement of said purchase the said Tunis gave to said William E. Uptegrove & Bro., six promissory notes maturing at different periods, and that none of said notes had been paid otherwise than by the substitution of said Tunis' acceptance at twenty days for the note first maturing, as testified by the witness, Uptegrove.

7. That said William E. Uptegrove & Bro. still holds said acceptance and the remaining five promissory notes aforesaid and at the trial table produced and tendered same to the plaintiffs.   Then the plaintiffs are not entitled to recover, but the verdict of the jury must be for the defendant.   (*Granted.*)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Arthur Geo. Brown* and *Thomas C. Weeks*, for the appellants.

The exceptions Nos. 1, 2 and 3 bring up for review two principal and governing rulings of the trial Court, in conformity with which the whole case was there decided, the fourth and fifth exceptions being to rulings which are subsidiary thereto.   The first and third bills of exceptions raise the following question, viz.: Do the Tunis and Knabe letters constitute a written contract, and was it, therefore, error to admit parol evidence tending to affect, vary or add to the terms and agreements contained in said letters ?   The second bill of exceptions raises the question, Was title to the lumber *res adjudicata* by reason of the prior and final adjudication of the replevin suit of Uptegrove and Tunis in the Superior Court, and was it, therefore, error to admit evidence in this cause tending to prove that the original purchase of the whole lot of lumber by Tunis from Uptegrove was fraudulent and void ?

The two letters taken together constitute the whole con-

tract as and when it was reduced to writing ; and there is no latent ambiguity in either of said letters requiring evidence *de hors* to explain or illuminate.   The parties are certain ; the subject-matter is clearly and specifically described, its value determined, the time of delivery specified and the method and time of payment provided for ; it limits the right of inspection to the selection by the vendee of a certain quantity of lumber of certain sizes and qualities to make the whole amount come to 100,000 feet, and therefore this contract does not fall within the exception to the general rule under which parol evidence is admissible.   *Fryer* v. *Patrick*, 42 Md. 55.

The appellee was allowed to offer evidence to the jury tending to prove that a verbal agreement was entered into between the parties prior to the said letters being written by them, to the effect that all the lumber should be delivered subject to the inspection of the vendee at its yards.   Such evidence was not offered as tending to prove an independent agreement collateral to the terms of the letters and as explanatory of some latent ambiguity claimed to be contained therein ; but it was offered to contradict and vary the written agreement.   The contract is not silent or uncertain in respect to the right of inspection ; on the contrary, it fully expresses the then existing understanding and intention of the parties.   It says, in words, that the vendee may select from the whole 100,000 feet "such lengths from the 4-4 No. 1 and 2 and select common 8 to 9 and 3 to 7 ft. long as *you may be able to use to advantage to bring the amount furnished up to 100,000 ft.*" and it limits such inspection and selection as prescribed. It is, therefore, respectfully submitted that it was error to admit the testimony excepted to in the first and third bills of exception.   *Merritt* v *Penin Con. Co.*, 91 Md. 464.

But it was contended at bar by the appellee that because the words of the Tunis letter are "I beg to confirm sale," and because the Knabe letter refers to "order given to your Mr. Welch," therefore, these letters do not constitute a written contract, but refer to and are merely a memorandum of another prior and verbal agreement of sale, and that the evidence

objected to was competent to go to the jury as showing what such prior agreement was; in other words, that the letters were not the contract at all; indeed, such was the opinion expressed by the Court, who said "I have decided that point. I have decided that the paper (referring to the letters dated July 2nd, 1900, and July 6th, 1900), is not the original contract, and you have a right to go into what was the original contract." But it is well settled that when an offer is communicated by letter and an acceptance is mailed thereto (and in this case received), "acceptance turns an offer into a contract and is irrevocable." *Wheat et al.* v. *Cross*, 31 Md. 103; *Latrobe & Whistler* v. *Winans*, 89 Md. 647; *Hand* v. *Evans Marble Co.*, 88 Md. 231. This Court has said "It is a very common thing to buy and sell by letter. In such cases the correspondence contains the contract and it is for the Court to construe the contract as it is extracted from the correspondence. *Cheney et al.* v. *E. Trans. Line*, 59 Md. 565; *Am. Lighting Co.* v. *McCuen*, 92 Md. 706. In the case at bar there was no express warranty of the quality of the lumber sold, and certainly none that it should be suitable for the manufacture of piano tops.

The effect of a complete contract of sale is to vest the property in the bargainee, whether the property be sold for cash or on credit. *Foley* v. *Mason*, 6 Md. 37; *Chaney* v. *Eastern Trans. Co.*, 59 Md. 557. Insolvency of the buyer does not revoke an agreement for the purchase of goods; and title in such cases passes on delivery. *McElroy* v. *Seery*, 61 Md. 389. Fraud on the part of the original vendee will not affect the title of a *bona fide* purchaser for value without notice. *Hall* v. *Hinks*, 21 Md. 406; *Lincoln* v. *Quynn*, 68 Md. 299.

It appears there was full opportunity for inspection, and the quantities and measurements were known to both parties. The goods were sold by description for "mahogany lumber," and it was marketable as mahogany lumber, as is evidenced by the fact that Uptegrove sold it as such to Tunis, and that the appellee claims to have since purchased it from Uptegrove & Co., kept it and used it; and it is well settled that, where goods are of a specified description, there is no implied war-

ranty of quality or that they are fit for a particular purpose, when an opportunity for inspection exists. *Rice* v. *Forsythe*, 41 Md. 389; *Rasin* v. *Conley*, 58 Md. 59; *Horner* v. *Parkhurst*, 71 Md. 110. And the vendor on delivery is entitled to recover the price, even though the goods are unsuitable to the vendeee's particular use. 71 Md. 117.

The exception to the rule of *caveat emptor* applies only in those cases where the examination at the time of sale is, morally speaking, impracticable, and mere inconvenience or labor is not impracticability. *Hyatt* v. *Boyle*, 5 G. & J. 119; *Warren Glass Wks. Co.* v. *Keystone Coal Co.*, 65 Md. 553.

It follows, therefore, from the aforegoing facts and rules of law that it was error to instruct the jury as in the defendant's first prayer leaving them to find some other contract than that contained in the aforesaid letters, and instructing them that if they found an agreement to the effect that all the lumber was subject to inspection and approval by the defendant before acceptance, then the plaintiff could not recover on the special contract as set up in this case.

This is not a case wherein evidence is offered tending to prove a contract partly in writing and partly by parol. Nor is it a case wherein the existence of a contract wholly collateral and distinct from the written one and contemporaneous with it is attempted to be set up. The verbal contract sought to be proved by the appellee is that the agreement for inspection and rejection as limited by the letters to certain quantities and qualities of the whole lot of lumber was, in fact, not the agreement of the parties, but that the right of inspection was to be exercised over the whole lot, and to such extent only was the parol evidence offered. It was an attempt to contradict and vary the written contract and was offered for no other purpose. It does not fall within the rule laid down in *Roberts & Co.* v. *Bonaparte*, 73 Md. 196.

This prayer does not assume, as in that case, that the contract was partly in writing and partly by parol and then leave the jury to determine from the whole evidence what the contract actually was; but it leaves the jury to find another con-

tract altogether distinct and separate from the terms of the letters, in respect to one point alone, to wit, the subject of inspection; and without any evidence being offered independent of the letters, respecting quantities, sizes, character of material, quality, method and rate of payment, time of delivery, etc., the prayer says that, if the jury find there was no written contract, then, if they further find lumber was delivered and the delivery was stopped in its course and said lumber was not approved by the defendant (appellee), and was only received as a matter of accommodation and subject to inspection, and before such inspection said lumber was replevied by Uptegrove & Bro., then the plaintiffs (appellants) cannot recover on the special contract set up in the letters. It instructs the jury that they may find there was no written contract, and, finding that, it strikes down all the material elements of a contract contained and to be found only in said letters.

The instruction, is clearly wrong, misleading and rests on no recognized principle of law. On the contrary, the first prayer of the plaintiffs is based squarely on their single contention, to wit, that the letters constitute a written contract between H. Clay Tunis and Wm. Knabe & Co. It leaves the jury to find the facts of the writing and receipt of said letters, and puts the construction of the contract where it rightfully belongs, to wit, with the Court. It leaves the jury to find that the plaintiffs (appellants) were the trustees of the estate of H. Clay Tunis and, as such, says they are the proper parties to recover for any breach of the contract, and it defines what money the jury may assess as damages, and for what.

The great bulk of the evidence contained in the record was offered by the appellee on the theory that it was competent for the appellee to ignore the case of *Uptegrove* v. *Tunis* altogether, and to reopen this whole subject of fraud and title in Uptegrove, which had been tried and determined in said case; and, for that purpose, to submit to the jury the same testimony adduced in the former case as a matter of defense in this case, and to avoid the contract now sued on.

The question is a narrow one.   If the trial Court was right in admitting the evidence aforesaid, if in an action of *assumpsit* to which Uptegrove & Bro. is a stranger, his title and right and possession to the lumber can be again submitted to a jury after it had been adjudicated by the same Court in a prior case, then it is small matter what the facts are, whether affecting Tunis in a greater or less degree, because, under the plaintiffs' 8th prayer the jury by its verdict has determined the fact, therefore the question to be here considered is, what is the legal effect of "*Uptegrove* v. *Tunis*" on this case?   Here is a case of replevin, brought by Uptegrove in the Superior Court of Baltimore City against Tunis, in which the defendant pleads title in a third person (Knabe) and the replication denies title in Knabe and asserts title in the plaintiff; issues are joined on the plea and replication; trial is had; verdict found for the defendant, and final judgment on verdict for the defendant and value of the property fixed at $7,100.   There was no appeal taken, and the verdict stands of record as a final judgment of the Superior Court of Baltimore City.   We contend that it constitutes the law of this case on the subject of fraudulent purchase and Uptegrove's title; that, the trial term having passed it cannot be reviewed by the Superior Court nor by this Court collaterally in this case; that whether or not there be irregularities or mistakes to be found in its procedure, the effect of its final judgment on the parties is conclusive.   This appellee appears to hold that it was competent to ignore this case of *Uptegrove* v. *Tunis;* to treat it and its conclusions as a nullity; to determine for themselves that the title was yet in Uptegrove notwithstanding a Court of competent jurisdiction had decided to the contrary, and of their own motion to rescind the sale made by Tunis to them and enter into another contract of sale with Uptegrove, whereby they hoped to procure title and possession of said lumber for a less price.   The witness, Ernest J. Knabe, testified that he had an understanding and agreement with Uptegrove at the time Uptegrove laid the replevin, to get possession of the lumber out of the estate of H. Clay Tunis, and

promised that appelle would aid Uptegrove provided Uptegrove protected him; and that the appellee was $2,000 to the good on the transaction through getting the lumber for $9,900 instead of $11,139.

If judgments of Courts can be set at naught at the discretion of individuals acting for their personal interests, then appeals are unnecessary. If when a suit has been decided adversely to the plaintiff its whole purpose and legal effect can be nulified by such agreements and combinàtions, then, indeed, there can be no longer any certainty in public justice. But, such, happily, is not the course of the law. To quote the words of this Court, "the law in dispensing even handed justice to all, has wisely taken care *'ut sit finis litium,'* and if matters which have been once solemnly decided, could be again drawn into controversy, there would be no end to litigation." * * * "Mr. Greenleaf has happily said, 'justice requires that every cause be once fairly and impartially tried ; but the public tranquility demands that having been once so tried, all litigation, of that question between the same parties should be closed forever.' " *McKinzie* v. *B. & O. R. R. Co.*, 28 Md. 174; *Fetterhoff* v. *Sheridan*, 94 Md. 454. And the term "parties" is not restricted to plaintiffs and defendants of record. It includes those who are directly interested in the subject-matter of the suit, knew of its pendency and had the right to control and direct or defend. (*Ib.*)

The judgment in *Uptegrove* v. *Tunis*, is conclusive against the appellee, even though not a party of record, to the extent that it decides the title to this lumber was *not* in Uptegrove at the time of the issuing of the writ of replevin in said case; and that the same operates as an estoppel upon appellee to claim title to the lumber by virtue of the alleged purchase from Uptegrove. While the action of replevin is a possessory action, yet in those cases in which issue is joined on a plea of property in another the burden is on the plaintiff to show title. 1 *Poe*, 252–3; 2 *Poe*, 530; *Warfield et al.* v. *Walter*, 11 G. & J. 85; *Lamotte* v. *Wisner*, 51 Md. 561. And when on a trial in replevin the verdict is for the defendant, it is conclusive as to

the want of title in the plaintiff; and the question of such title cannot be reopened in another suit.  *Seldner* v. *Smith and wife*, 40 Md. 613.

The title which the appellee holds to the property is the title which Tunis had, and that title has never been successfully impeached.  The title of the appellee is that which he acquired by and under the written contract of sale of July the 2nd and 6th, 1900.  The lumber has always been in the possession of the appellee.  In legal effect, title has never passed to Uptegrove by the replevin proceedings.

*Randolph Barton* and *James M. Ambler*, for the appellee.

The substantial question in this case is : Can one who contracts to sell goods of which he has fraudulently obtained possession, enforce payment of the price from his innocent purchaser after the latter has been compelled to surrender the goods to the rightful owner?  The controversy here is not between the original owner and an innocent purchaser for value and without notice ; but this suit is an effort on the part of a fraudulent vendee to compel his innocent purchaser to pay for goods that have been reclaimed by the defrauded vendor.

*As to the first exception.*—The first of the two letters shows on its face that it was not the original contract.  It does not purport to be an offer, or promise or acceptance, but expressly states that it is meant to *confirm*—that is, to give form and validity to—a sale already made of certain specific chattels. Neither of the letters contain a word about approval or inspection, but two witnesses state very positively that the sale was subject to the purchaser's inspection and approval.  The object of this testimony was not to explain, modify or contradict the written instruments, but to show that there were other and independent terms not expressed in the letters, and the ruling of the Court was in accord with the law laid down by this Court.  *Walker* v. *Shindel*, 58 Md. 360; *Roberts* v. *Bonaparte*, 73 Md. 191; *Fisher* v. *Andrews*, 94 Md. 46.

The plaintiffs next objected to any evidence that Tunis had obtained possession of the lumber by fraud, contending that this question had been determined by the replevin case and was *res adjudicata;* and this objection was also overruled. It has been repeatedly held by this Court that to give to a judgment in one suit conclusive effect in a subsequent suit, it is essential that the decision in the first suit should have been between the same parties or privies, touching the same subject-matter, by a Court of competent jurisdiction *and on the merits.* *Shafer* v. *Stonebraker,* 4 G. & J. 345; *Offutt* v. *Offutt,* 2 H. & G. 178; *Schindel* v. *Suman,* 13 Md. 310; *Whitehurst* v. *Rogers,* 38 Md. 517; *Orendorff* v. *Utz,* 48 Md. 298.

It has also been repeatedly held that in replevin the essential question is the mere right of possession and that a finding for the defendant does not necessarily determine the ultimate right of property. *Belt* v. *Worthington,* 3 G. & J. 247; *Warfield* v. *Walter,* 11 G. & J. 80; *Walter* v. *Warfield,* 2 Gill, 216; *Mason* v. *Sumner,* 22 Md. 231; *McKinzie* v. *B. & O. R. R.,* 28 Md. 175; *Selder* v. *Smith,* 40 Md. 602; *Crabbs* v. *Koontz,* 69 Md. 59; *Fidelity, &c., Co.* v. *Singer,* 94 Md. 124.

Even the ordinary and regular judgment for a return of the goods shows only that the plaintiff had not the right of possession at the time of issuing the writ, although his title may have been perfectly good in all other respects. To ascertain what, if anything, beyond the question of the plaintiff's right of possession for the time being, has been decided by such judgment, the whole record must be examined and it is frequently necessary to resort to parol proof. *Warfield* v. *Walter,* 11 G. & J. 83; *Mason* v. *Sumner,* 22 Md. 321; *McKinzie* v. *B. & O. R. R.,* 28 Md. 175; *Whitehurst* v. *Rogers,* 38 Md. 515; *Seldner* v. *Smith,* 40 Md. 612, 613; *Crabbs* v. *Koontz,* 69 Md. 59.

Now, even if it be assumed that we have here the same parties or privies and the same subject-matter as in the replevin case, it is at least doubtful whether the Court had jurisdiction in the replevin case, and it is very certain that the judgment in that case was *not* on the merits. The Court's

instruction there declared that the plaintiff could not recov-
if, pursuant to a contract and not collusively to avoid replevin,
the lumber had been delivered by Tunis to the Knabe Com-
pany and was in its possession when the suit was instituted,
even though there was then pending between them a contro-
versy as to quality and as to whether or not it had been ac
cepted; and to this was appended the list of authorities
holding that the person *in whose possession the goods are found*
is an indispensable party to an action of replevin.

If this does not show with sufficient certainty that the re-
plevin failed only because Tunis was not in possession of the
goods when the writ issued, any vestige of a reasonable doubt
must vanish when we examine the judgment. That is simply
" For the defendant for costs." The dates of the docket en-
tries show that the judgment was entered after deliberation,
and that an order for the return of the goods could not have
been omitted through inadvertence.

It seems to us too clear for argument that this judgment
did not determine anything on the merits, but if the Court did
have jurisdiction, and did clearly settle any question, then the
sole point decided, the *res adjudicata* was that *Tunis had no
right to the lumber;* otherwise there must have been an order
for its return. *Russell* v. *Place*, 94 U. S. 606, 608.

After Tunis opened negotiations for the purchase of the
mahogany the matter reached a point where J. P. Uptegrove,
treasurer of the company, deemed it advisable to " investi-
gate the financial end." For that purpose he got reports from
the two mercantile agencies and then came to Baltimore early in
June, 1900, to see Tunis personally, telegraphing Tunis in
advance of his coming. He did not find Tunis, but did meet
Welch and questioned him about Tunis' responsibility. Welch
stated that of this he had no personal knowledge, but had
only a few weeks before been told by Tunis that he was
worth over $100,000. The reports from Bradstreet's and
Dun's mercantile agencies, had both given, as coming from
Tunis himself within a comparatively recent period, statements
of his financial condition and responsibility even more favor-

able than the one made to Welch. On the faith of these statements, Uptegrove agreed to sell to Tunis for $14,030.10 represented by six notes, dated June 12th, 1900, each for $2,338.35 and payable, the first at sixty days and the others at intervals of thirty days.

The reports from the mercantile agencies were competent evidence to prove the fraud. There was no objection to Welch's testimony, and no suggestion of an effort to contradict him, and it is very certain that Welch, the purchasing agent, was authorized to make representations as to his principal's solvency. 1 *Am. & Eng. Ency. Law*, 1021 (Agency); *Hunter v. Hudson River I & M. Co.*, 20 Barb. 493. It is equally certain that the false representations made to the mercantile agencies were for the purpose of obtaining credit, and it has been time and again laid down by Courts of high authority, that such representations are to be considered as made directly to the persons to whom they are communicated by the agencies. 6 *General Digest* (1898), p. 1020; 14 *Am. & Eng. Ency. of Law*, 103 (Representations as to solvency); *Eaton, Cole & Burnham Co.* v. *Avery*, 83 N. Y. 31; *Genesee Co. Savgs. Bank v. Barge Co.*, 52 Mich. 164; *Silberman* v. *Munroe*, 104 Mich. 352; *Soper Lumber Co.* v. *Halsted & Harmount Co.*, 73 Conn. 552–3; *Re Epstein*, 109 Fed. Rep. 874 (1901); *Nicholls* v. *McShane*, 64 Pac. Rep. 375 (Colo. 1901); *Ernst* v. *Cohn*, 62 S. W. R. 186 (Tenn. 1900); *Kellogg Co.* v. *Holm*, 85 N. W. R. 159 (Minn. 1901); *Moyer* v. *Lederer*, 50 Ill. App. 94 (1892); *Wilmot* v. *Lyon*, 11 Ohio Civ. Ct. 238 (1888); *P. Cox Shoe Mfg. Co.* v. *Adams*, 105 Iowa, 402.

Of course it was not suggested that in making the sale to Tunis, Uptegrove was in any way misled by this "statement" of July 1st, 1900, which was subsequent to the sale, but the "statement" was offered as tending to show fraudulent intent on the part of Tunis, on the familiar principle that when fraud is the gist of the action or subject of inquiry, fraudulent conduct, acts and declarations of a similar character at or about the same time are admissible to show the *quo animo* of the particular transaction. *Castle* v. *Bullard*, 23 How. (U. S.) 172,

186; *McAleer* v. *Horsey*, 35 Md. 439; *Friend* v. *Hamill*, 34 Md. 298; *Lamb* v. *State*, 66 Md. 285; *Carnell* v. *State*, 85 Md. 1.

The plaintiff's first prayer was properly rejected, because it wholly disregards the evidence as to the defendant's right of inspection, which we have already discussed under the first and third exceptions. A further objection is that it proposes to allow credit for such lumber as the jury may find from the evidence to have been *returned*, when there is no evidence that any lumber was ever returned, although it was all refused and rejected. Another error is that it calls for interest as a matter of right and not in the discretion of the jury. But the great vice of the prayer is that it totally disregards the evidence that Tunis had no right io sell the lumber; that this was reclaimed and recovered by Uptegrove while the controversy between Tunis and Knabe was still pending, and that Knabe had paid the full value to Uptegrove, the true owner, before this suit was brought, or certainly before it came to trial. In 2 *Benjamin on Sales*, sec. 847, p. (marginal) 631, it is said to have been decided that where a party buys from one not entitled to sell and afterwards pays the price to the true owner, he is not liable to an action by his vendor for the price; and this statement of the law is fully sustained by the two cases cited in support of it. *Dickenson* v. *Naul*, 4 B. & Ad. 638 (1833); *Allen* v. *Hopkins*, 13 M. & W. 94 (1844).

It has been so often held by this Court that assignees for the benefit of creditors stand in the shoes of their assignor, that it is unnecessary to go outside of this State for authorities to show that these plaintiffs succeeded simply to the rights of Tunis and can assert no claim which he could not assert. *Ratcliffe* v. *Sangston*, 18 Md. 383; *Burnett* v. *Bealmear*, 79 Md. 36.

There can be no doubt that it was a wrong on the part of Tunis to attempt to sell lumber which he had obtained by fraud (*Hall* v. *Hinks*, 21 Md. 418), and these plaintiffs, as we have seen, stand in his shoes and can enforce only his rights. Nor can there be any doubt that in a direct proceeding between Tunis, or his trustees, and the Uptegrove Company, neither

Tunis nor his trustees would be allowed to set up a title in the Knabe Company that was created only by Tunis's fraud (*Puffer* v. *May*, 78 Md. 74), and the Court cannot fail to see that in this case the Uptegrove Company is the real defendant.

The Knabe Company unquestionably had a lien on the lumber for the amount of its advances and expenses (*Higgins* v. *Lodge*, 68 Md. 229). When the Uptegrove Company recognized that lien and made good the amount so advanced, there was no obligation on the Knabe Company, either in morals or in law, to insist upon claiming more. Surely, the Knabe Company was not bound to hold the lumber in order to secure for Tunis the fruits of his wrong doing. The whole doctrine of the rights of a *bona fide* purchaser is for the protection of one who has innocently and in good faith parted with valuable consideration for an apparently good title, but we have not found a single case in which it has been applied for the protection of a *fraudulent purchaser*.

To constitute a *bona fide* purchaser for value, there must be full payment of the stipulated price, whatever that may be, before any notice or infirmity in the title of the vendor. 2 *Pomeroy's Eq. Jurisp.*, sec. 750; *Carson* v. *Jones*, 60 S. W. Rep. 175 (Tenn. 1900); *Wormley* v. *Wormley*, 5 Wheat. 422, 450; *Fowler* v. *Merrill*, 11 Howard, 375, 395; *Dresser* v. *Mo. & Ia. R. R.* 93 U. S. 92; *Williams* v. *Huntington*, 68 Md. 603; *Price* v. *McDonald*, 1 Md. 403; *Tyler* v. *Aberg*, 65 Md. 20.

Indeed, Knabe's testimony is very positive that he never accepted any part of the lumber and never paid any money as part of the price, but simply made Tunis an advance on the faith of the lumber and in anticipation of some "adjustment." Even if it should be held that the two letters constituted the whole contract, that was at most a sale on credit, and it is very clear that a purchaser *on credit* is not a purchaser for value. *Partridge* v. *Rubin*, 15 Daly, 344; *Ringgold* v. *Bryan*, 3 Md. Ch. 496.

Tunis at the time of the purchase had only $76,326.77 of resources with which to discharge $172,637.85 of liabilities and that is gross insolvency, but when it is observed that what

might be called his "quick assets" were not over $30,000, while the bills payable alone amounted to over $100,000, it will be seen at once that Tunis could have had no "reasonable expectation" of being able to pay the Uptegrove Company $14,000 in five or six months, and this explains why it is that after more than two years' work, Tunis' trustees have paid from his estate only one dividend of about five per cent. In the face of this demonstration of overwhelming insolvency at the time of the transaction, can it be said that there was no evidence of fraud on the part of Tunis in making the purchase?

The plaintiffs' eighth prayer, as originally presented, asked the Court to instruct the jury that even though Tunis was insolvent at the time of his purchase, and knew himself to be so, yet he was under no obligation to disclose that fact, and his failure to make such disclosure was not a fraud, and if he then had a reasonable expectation of being able to pay his notes as they matured, his purchase was not fraudulent.

As it thus stood, the prayer wholly ignored the evidence of the false and fraudulent representations by means of which Uptegrove was induced to sell, and it was equivalent to telling the jury that in the absence of a deliberate intention not to pay, it makes no difference by what artifice or falsehood a sale is procured.   That view is as contrary to established law as it is to sound morals, for it is well settled that false representations as to solvency will avoid a sale even though there be no actual intent not to pay. *Richardson* v. *Goodkind*, 56 Pac. Rep. 1079; *Moore* v. *Kinsdale*, 77 Mo. 217; *Hodgedon* v. *Hubard*, 18 Ver. 504; *Judd* v. *Weber*, 55 Conn. 276. And this Court has more than once declared : "Whenever one knowingly makes false representations with intent to induce another to enter into a particular contract which but for such representations he would not have entered into and the plaintiff has been damnified, a case of fraud has been made out and an action will lie." *Buschman* v. *Codd*, 52 Md. 202; *Cook* v. *Gill*, 83 Md. 177.

In view of Uptegrove's testimony that he made the sale on the faith of Welch's statement and the statements received

from the mercantile agencies, this prayer as it was offered by the plaintiffs, was manifestly improper ; but with the modification made by the Court it gave the plaintiffs the full benefit of everything they could ask. *Higgins* v. *Grace*, 59 Md. 371.

Defendant's first prayer denied the right of the plaintiffs to recover on the special contract in case the jury found that the whole contract was not contained in the two letters, but left it entirely open to them to recover, under the common counts, the value of the lumber that the defendant retained and used unless the jury believed that the Uptegrove Company had rightfully replevied it. In other words, the prayer still left upon the defendant the burden of showing that Tunis had obtained the lumber by fraud and was not entitled to recover on the *quantum valebat.* This, we take it, is in accord with the decisions of this Court. *Williams* v. *Woods*, 16 Md. 220; *Jones* v. *Mechanics' Bank*, 29 Md. 287; *Frank* v. *Miller*, 38 Md. 450; *Hewes* v. *Jordan*, 39 Md. 472; *Corbett* v. *Woolford*, 84 Md. 426; *Fort Worth Co.* v. *Consumers' Co.*, 86 Md. 635; *Fisher* v. *Andrews*, 94 Md. 46.

The defendant's second prayer was on the theory that if the false statements to the mercantile agencies and to Welch were made by Tunis for the fraudulent purpose of obtaining credit, and were the means of inducing the Uptegrove Company to make the sale to him, then, so far as Tunis and his trustees were concerned, the Uptegrove Company had the right to rescind the sale and reclaim the lumber; and that if the lumber was reclaimed by the Uptegrove Company while the sale from Tunis to Knabe Company was still inchoate, Tunis' trustees could not compel the Knabe Company to pay for the lumber after it had been replevied by the rightful owner. This prayer is, we think, fully supported by the authorities that we have already cited.

The defendant's third prayer asks the Court to instruct the jury that Tunis' purchase was fraudulent if at the time he was insolvent and knew himself to be insolvent, and had no reasonable expectation of paying for the goods. This prayer follows the exact language used by this Court in several cases.

*Powell* v. *Bradlee*, 9 Gill and J. 278; *Peters* v. *Hilles*, 48 Md. 506; *Diggs* v. *Denny*, 86 Md. 116; *Edelhoff* v. *Horner-Miller Co.*, 86 Md. 595; *Standard Co.* v. *O'Brien*, 88 Md. 335.

The sixth and last prayer omits any reference to the mercantile agencies, and asks a verdict for the defendant if the jury find that Welch was Tunis' agent, authorized to purchase on credit; that Tunis falsely stated to Welch that he was worth $100,000 when he was practically insolvent, that the statement was repeated by Welch to Uptegrove, and induced Uptegrove to make the sale, and that Uptegrove rescinded the sale and replevied the goods before the sale from Tunis to Knabe was completed.    It can hardly be necessary to cite any additional authorities to sustain this proposition.    That an agent authorized to purchase on credit may make representations as to his principal's solvency is clearly settled.    1 *Am. & Eng. Ency. of Law*, 1021 (Agency); *Hunter* v. *Hudson River I. & M. Co.*, 20 Barb. 493.

And this Court has more than once reaffirmed JUDGE STORY's statement of the law that holds the principal liable to third persons, "in a civil suit, for the frauds, deceits,.concealments, misrepresentations, torts, negligences and other malfeasances, or misfeasances and omissions of duty of his agent in the course of his employment, although the principal did not authorize or justify or participate in or indeed know of such misconduct or even if he forbade the acts or disapproved of them."    *Tome* v. *Parkersburg R. R.*, 39 Md. 36; *W. M. R. R.* v. *Franklin Bank*, 60 Md. 36; *Andrews* v. *Clark*, 72 Md. 396.

PAGE, J., delivered the opinion of the Court.

This suit was brought by the appellants, trustees of H. Clay Tunis, to recover the price of certain mahogany lumber alleged to have been sold by Tunis to the appellees.    The *narr.* contains two money counts and a special count.    The defendants plead the general issue.    The judgment being for the appellees the appellants have appealed.

Five exceptions were taken at the trial.    The first four to

the admission of evidence; the fifth to the ruling of the Court on the prayers.

The first and third exceptions raise the same questions, and will be considered together.   To maintain the issues on their part the plaintiffs offered the following letters, viz:

Baltimore, July 2nd, 1900.
Messrs. William Knabe & Co., City.

Dear Sirs:—I beg to *confirm sale* to you of the following mahogany mentioned upon my list, a copy of which I enclose, namely all the 5–8, all the 4–4 No. 1 and 2 and 4–4 select, common 10 to 16 feet long, all of the 5–4 and 6–4 and 8–4, except the common and culls, and end lengths from 4–4 No. 1 and 2 and select common 8 to 9 and 3 to 7 feet long, as you may be able to use to advantage being the amount furnished up to 100M ft.   Price on the 5–8 to be six cents per foot, and on the balance eleven cents per foot, delivered in your yard, delivery to be made this month.   Terms: Four equal payments to be made on November 10th, 1900, January 10th, 1901, February 10th, 1901, and March 10th, 1901.

Yours truly,
H. Clay Tunis.

Baltimore, July 6th, 1900.
Mr. H. Clay Tunis, City.

Dear Sir :—Referring to your favor of the 2nd inst., confirming order given to your Mr. Welch, for mahogany, beg to say, that the same is correct, as to quantities, terms, etc., as specified.

Kindly advise us two or three days before you have the lumber brought to the city, as we will have to make some preparations for receiving it into our yards.

Yours truly,
William Knabe & Co.
J. N. H.

A witness then testified that he had made the sale referred to in the letter of Knabe & Co. on behalf of Tunis; and on cross-examination said the Knabes " were to judge whether the lumber suited their purposes by the approval and inspection of it, upon its arrival in Baltimore;" whereupon the counsel for the defendants asked him if the agreement (contained in the letter), was " the original contract ?" and was it (the lumber) to be subject to their (Knabes) approval and inspec-

tion.   In the third exception, the witness was further ques-
tioned as to the making and substance of the verbal contract
through the agency of the witness.   These questions, and the
answers, were objected to upon the grounds that the letters
contained the contract, and that parol evidence could not be
admitted to add to or vary it: but the Court overruled the
objection and held the letters did not contain the original con-
tract, and the defendant had " a right to go into, what the
original contract " was.

The question presented by these exceptions therefore is,
whether the letters contained, or were intended by the parties
to contain, the contract ; or whether they were intended merely
to refer to a contract that had already been made and to con-
firm it.   It is too plain for argument that if it was intended to
reduce the contract to a writing which should be the expres-
sion of what the parties had done, or intended to do, all pre-
vious stipulations, negotiations and terms are supposed to be
embodied in the writing, and parol evidence is not admissible
to add to or vary it.   *Artz* v. *Grove*, 21 Md. 456.   And it is
equally plain that if an offer is communicated by letter and
an acceptance is made, the offer becomes a contract between
the parties.   *Stockman* v. *Stockman*, 32 Md. 207; *Hand* v.
*Evans Marble Co.*, 88 Md. 231; *Wills* v. *Carpenter*, 75 Md. 84.

Is this case within any of the principles set forth in the
cases cited above ?   It seems to us clear that the letter of
Tunis was not intended to and did not import more than a
confirmation of a transaction that had been theretofore made
by Welch, the agent of Tunis.   Tunis' letter specially so
states :   " I beg to confirm sale to you," etc.; and what follows
this assumes that a sale had already been made of the lumber
mentioned, to be delivered and paid for as stated.   Knabe &
Company's reply shows that they so regarded it.   They say
" your favor of the 2nd inst. *confirming* order given to your
Mr. Welch, etc."   The letter of Tunis does not admit of a
construction that would amount to an offer to sell.   It refers
exclusively to a prior transaction, and only " *confirms* " a sale
that had already been made by Welch, who, as it appears from

the evidence, was his " hardwood salesman." Nor does
Tunis in his letter undertake to state the *contract* of sale ex-
cept as to " quantities, terms, etc." As to all other condi-
tions, if any, no reference at all is made. As we have already
said, it also seems to be clear that the Knabes so construed
the letter, for in their reply they do not accept an offer, but
only acknowledge the receipt of the Tunis letter, which they
say " confirms order given to your Mr. Welch;" and then
they add " that the terms of the order as contained in the
letter is correct as to quantities, terms, etc., as specified."
If no order had been given to Welch as agent of Tunis, then
there would be no evidence of a contract of sale in the case;
and if there was such an order, that was the thing the parties
by their letters *confirmed.* What was the " order" thus con-
firmed ? Evidence was admissible to show what it was. So
far as stated in Tunis' letter, and admitted to be correct in
Knabe's letter, no evidence was required because to that ex-
tent both parties had admitted its terms; but these admissions
went no farther than stated, and if there were other features,
not stated in the letters, that had been agreed to by both
parties, it was competent for either party to show what fea-
tures of the order had been omitted from the letters. It was
the whole order as given to Welch, and not a part of it, that
Tunis " confirmed." It was therefore the order in its entirety
that constituted the contract of sale between the parties. We
find no error in these rulings.

The plaintiffs further to maintain the issues on their part
then offered in evidence the docket entries in the case of *Up-
tegrove & Co.* v. *Tunis,* being an action to replevin brought by
the former against the latter to recover from the latter the
lumber which is the subject of this suit. After the introduc-
tion of these, and also the original papers, as well as the testi-
mony taken therein, and also the instructions granted and re-
fused by the Court, the appellees offered evidence tending to
prove that Tunis had fraudulently purchased the lumber from
Uptegrove & Bros. and therefore had fraudulently obtained
possession of it. The appellant objected to the reception of

this evidence.  The Court, however, overruled these objections as well as a motion to strike out and exclude such evidence as had already gone to the jury subject to the appellants' objections; and these rulings constitute the second exception. The ground of the appellants' objection to this evidence was and is that the title to the lumber had been finally adjudicated in the replevin suit, and therefore in the present case the title was no longer an open question.   It is well established that a former judgment upon the same subject-matter operates as an estoppel between the same parties, provided that it appears by the record or other proof that the matter in issue was decided in the former suit; *Whitehurst* v. *Rogers*, 38 Md. 512, and the term "parties," include those who are directly interested in the subject-matter of the suit, knew of its pendency and had the right to control and direct or defend it.   *McKinzie* v. *B. & O. R. R. Co.*, 28 Md. 175.

It is shown by the evidence, and not contradicted, that Knabe & Co. had full knowledge of the former suit.  Mr. Ernest Knabe testified that he "had an understanding and agreement with Uptegrove, at the time he laid the replevin, to get possession of the lumber, that he (Knabe) would aid him provided Uptegrove would aid him." Whatsoever, therefore, was decided in the replevin suit as to title is now *res adjudicata* in the present case.

Now, what was decided in the former suit, as appears by the record or other proof?   Two pleas were there interposed, first, *non cepit*, and second, property in William Knabe & Co; the replication was property in the plaintiff (Uptegrove), and not in Knabe & Co; the verdict and judgment were for the defendant, but the Court in the judgment did not order a return of the property.   Unexplained, the judgment and verdict could have been rendered, either upon a finding that the property was not in the possession of the defendant (*Herzberg* v. *Sachse*, 60 Md. 433); or that the plaintiff had not title or right of possession as against the defendant (*Seldner* v. *Smith*, 40 Md. 612); or, that the title and right of possession was in Knabe & Co.   It is impossible to determine, however, from

the form of the verdict, upon which of these grounds the decision of the Court (who sat as Judge and jury), was placed. Nor do the instructions granted by the Court throw any light upon this difficulty. There were only two prayers granted. One, upon the Court's own motion, wherein the pivotal fact, upon which the defendant's right to a verdict depended, was whether or not the goods were in the "possession of the defendant at the time of the institution of the proceedings." If there had been no other instruction than this, it might seem that the question as to the right of possession of, or title to, the property was not decided at all, but only that the defendant did not take, or was not in the possession of, the property. The other prayer granted was that there was no other evidence offered legally sufficient to entitle the plaintiff to recover. This covered all the possible grounds upon which the plaintiff could recover under the issues in the case. The proof adduced in the case, as appears by the record, covered all the possible defenses under the evidence that was offered, viz : as to the title of Tunis as well as that of Uptegrove; and whether the lumber at the time of the bringing of the suit had been, or then was, in the possession of the Knabes. It therefore appears that several distinct matters were in issue under the pleadings and proof upon anyone of which the verdict and judgment could have been rendered, and no extrinsic evidence was adduced in this case from which it can be determined upon which of them the judgment was rendered. If the judgment had been for the plaintiff, the same difficulties would not have been presented, for if such had been the case, the effect of the judgment would have been at most to decide that the right to the possession was in the plaintiff, and upon this hypothesis this case would then be within the rulings in *McKinzie* v. *B. & O. R. Co.*, 28 Md. 174; and *in that case* where the pleas being *non cepit* and property in another, it was held that the pleas imposed upon McKenzie the *onus* to prove title in himself, and as he had done so successfully the judgment in his favor operated as an estoppel between the same parties. The Court in its opinion, in this

case, noted a distinction between the facts before them and those presented in *Warfield & Mactier* v. *Walter*, 11 G. & J. 83, where the pleas being the same the verdict and judgment were against the plaintiff. The Court referring to that case said, "Had the verdict and judgment been for the plaintiffs, the judgment would have been conclusive and operated as an estoppel, because the title of the plaintiffs was the matter in issue. But being adverse to the plaintiffs, the verdict only went to the extent of declaring that the title was not in them; and could not be regarded as declaring title in anyone else." In the case at bar, however, where there was evidence of the actual possession of the property by the Knabe & Company at the time of the suit, the verdict and judgment might have been made upon the finding of the non-possession of the defendant at the time of bringing of the suit. The judgment therefore could not operate as an estoppel in this suit, whereby the parties are prevented from showing that there was no title in the defendant, Tunis. In *Whitehurst* v. *Rogers*, 38 Md. 518, this Court announced the same doctrine. It was there said: "It is not necessary to the conclusiveness of the former judgment that issue should have been taken on the precise point which is controverted in the second trial ; it is sufficient if that point was essential to the former verdict." We have seen that in the former case the determination of the title was not essential to the finding of the judgment and verdict that were rendered, and not being conclusive, evidence tending to prove that Tunis had obtained the possession of the lumber by fraud was properly admitted.

The fourth exception is to the admissibility in evidence of certain reports by the Dun and Bradstreet Mercantile Agencies. Evidence had gone to the jury showing that the lumber in dispute had belonged to William E. Uptegrove & Bro., a corporation, that this company had agreed to sell it to Tunis, and thereafter before the purchase-money had been paid, Tunis sold a large part of it to William Knabe & Co.; that after Tunis began its delivery, the Knabes refused to accept, on the ground that it did not come up to the require-

ments of their contract (with Tunis), but agreed to permit the balance to be stored in their yard for their mutual convenience ; and that Tunis, having made default in his payment to Uptegrove, the latter upon inquiry found that Tunis had imposed upon him by false representations ; and therefore elected to rescind the sale and resume the possession of that part of the lumber which had not been sent to the yard of the Knabes. For the purpose of showing some of the false representations by which Uptegrove & Co., had been induced to sell to Tunis, the defendant offered in evidence certain statements of Tunis, made to Uptegrove by himself or through his agent, Welch, and that Uptegrove, himself, prior to the sale, had examined the reports of these mercantile agencies, and that the representations contained in these reports as to the financial condition of Tunis, together with the false statements made by Tunis by himself or through his agents, constitute the inducement which led Uptegrove to extend credit to Tunis, who at that time was hopelessly insolvent, with no expectations of paying his creditors. The offer and report of the mercantile agency was made and admitted by the Court, "subject to the proof of its authenticity ;" and subsequently, by the granting of the fourth prayer of the defendant, the jury were directed, "to exclude from their consideration all of the reports furnished by R. G. Dun & Co. to Uptegrove outside of the matters testified to by said Robert W. Brown, as stated to him, by said Tunis or obtained from the books of said Tunis by his direction."

The witness Brown, who made the statements contained in the reports, testified that in May, 1900, he called on Tunis for a statement of his financial condition, and was told by him, "that it was as good as it was when he made the previous statement (that is the statement of July, 1899), and that the figures in that would practically be good." The witness reported this and the statement was given out by the agency. In the Spring of 1900, he had made a statement of his affairs as of 1899, July 1st, from the books shown to the witness by Tunis in response to a request to be informed as to

his condition. It therefore appears that the reports as to Tunis' affairs came directly from him. The admissibility of these reports were especially excepted to, for the following reasons: Because,

1st. They had not been sufficiently authenticated.

2nd. There was no evidence that they were not correct at the time of the purchase of the lumber by Tunis (about June, 1900.)

3rd. No evidence that Uptegrove & Co. relied on the truth of said reports.

4th. No evidence that such reports were made by Tunis with design of imposing and cheating Uptegrove, or the public generally, in respect to the sale of said lumber.

After what has already been said, the first of these reasons requires no further attention. The fourth reason raises the question as to the motives of Tunis in issuing the statements that may reasonably be imputed to him in the absence of any express proof on the subject.

In *Blum's case,* 94 Md. 388, where the defendants were indicted for obtaining goods on false pretenses, representations, etc., exception was taken to the admission of the testimony of an expert accountant to testify as to the details of a statement of the financial condition of the traverser, made by one of the firm of Blum Bros. & Harris to a reporter of R. G. Dun & Co. and by him reduced to writing and examined by the accountant in connection with the books. The Court ruled this evidence out because it had not been so clearly established that the statements to the agency were made with the fraudulent purpose to use such agency as an instrument in accomplishing a fraud upon his vendor or some other dealer as to justify the Court "in saying that a fraud was perpetrated through the medium of the agency of a character, *sufficient to justify* criminal prosecution therefor." To support this view the case of *Deckerhoff* v. *Brown,* (unreported), 64 Md. xiii, is cited wherein the rule laid down in *Victor* v. *Renlein,* 33 Hun. 549, is approved, that "when the only representations made are those furnished to sellers by these agencies, it must be

clearly shown that the accused buyer made the statements to the agency with the fraudulent intent to use such agency as an instrumeut in accomplishing a fraud upon his vendor or some other dealer." In the case at bar, there were other representations, alleged to be false, made by Tunis, which it is contended contributed to induce Uptegrove to sell the lumber and extend a credit to Tunis. So that the question here is not whether standing alone false representations to such agencies are sufficient to establish a fraud of a criminal character, but whether such reports can be offered for the purpose of showing, in connection with other representations, fraud and deceit in the purchase of merchandise on the part of the buyer, of such a character that the seller may avoid the transaction.

Now for the sake of argument, assuming that the reports were false, and were known to be so by Tunis, they must have been made to the agency that they might be communicated to others and be believed by them. They were made to a concern whose business, it is well known, is to disseminate among business men the character and standing of all other men of business, with whom they may have transactions, that require credit and capital. A statement to them to be disseminated broadcast, if known to be false at the time it was made, could only be made, for the purpose of securing a larger credit than would have been possible if only the strict truth had been given. This view, which is apparently reasonable, has been adopted by most of the Courts of the country. In the case of *Eaton, Cole & Burnham Co.* v. *Avery*, 83 N. Y. 33 (38 Am. Rep. 389), a leading case, the Court said : "It is not essential that a representation should be addressed directly to the party who seeks the remedy for having been deceived and defrauded by means thereof." "A person furnishing information to such an agency can have no other motive in so doing than to enable the agency to communicate such information to persons who may be interested in obtaining it for their guidance in giving credit to the parties, and if a merchant furnishes to such an agency a willfully false statement of his

circumstances, or pecuniary ability, with intent to obtain a standing and credit to which he knows he is not justly enti-tled, and thus to defraud whoever may resort to the agency and in reliance upon the false information there booked, extend a credit to him, there is no reason why this liability to any party defrauded by this means, should not be the same as if he had made the false representation directly to the party injured." Of similar import are the following cases: *Soper Lumber Co.* v. *Halstead & Harmount Co.*, 73 Conn. 547; *Genesee Co. Savings Bank* v. *Barge Co.*, 52 Mich. 164; *In re Epstein*, 109 Fed. Rep. 874; *Cox Shoe Co.* v. *Adams*, 105 Iowa, 402; *Nicholls* v. *McShane*, 64 Pac. Rep. 375 (Colo.)

The appellant offered seven prayers, all of which were rejected and the appellee six, all of which were granted.

The first and second prayers of the appellants instructed the jury that the letter of Tunis and the reply of the Knabe & Co. constituted the contract for the sale of the lumber; and was therefore bad for reasons already stated. The second prayer is open to the additional objection that it ignores all the evidence respecting the manner in which the Knabes became possessed of the lumber, and Uptegrove's relation to it. The third, seventh and fifth prayers were defective in that the jury is told that the suit in replevin established conclusively that the title to the lumber was not in Uptegrove. The fourth prayer was properly rejected. There was evidence in the cause tending to show that Knabe had refused to accept the lumber, because it was not of satisfactory quality, and had merely permitted the lumber to be put in his yard for the mutual convenience of the parties; and in view of this it became and was a matter of law, upon all the testimony in the case, whether there had been an acceptance by the Knabes. To instruct the jury therefore to find an acceptance, without informing them what facts amounted to an acceptance, was calculated to mislead them and therefore was faulty. The prayer practically denies that Knabe & Co. had the power to reject all or any part of the lumber, if, when part of it had been delivered, it was found it did not measure up to the

standard fixed by the contract. The jury should have been told explicity what the legal effect would be, if they found that Knabe had rejected, or attempted to reject, the lumber after part of it had been received. The sixth prayer is open to the same objection and in addition that it instructed the jury there was no evidence that the purchase of the lumber was fraudulent on the part of Tunis.

The modification added by the Court to the 8th prayer was proper.

We find no error in the granting of the defendant's prayers. Without going over these prayers in detail, we may say that they put the case fairly before the jury. By the first, the jury were told that the plaintiff could not recover on the special count, which set up a contract by letter, if they found the contract was "not in writing," thus leaving open the question of their right of recovery upon the common counts.

The 2nd, 4th and 5th (marked 6th in the record) as granted, were in accordance with the views already here expressed.

The third prayer is in accordance with instructions approved in *Peters* v. *Hilles,* 48 Md. 507, and other cases in this Court.

Finding no error the judgment will be affirmed.

*Judgment affirmed.*

(Decided June 30th, 1903.)