# Dowty *v.* Hall.

*Bill in Equity for Account and Settlement of Administrations.*

1. *Marriage of administratrix; liability of husband for wife's acts.* On the marriage of an administratrix, her husband becomes co-administrator with her, and liable as such for any act of administration afterwards performed by her.

2. *Settlement of administration in equity; parties to bill.*—A sole heir and distributee of an intestate's estate may maintain a bill in equity against the administratrix and her husband, to compel a settlement of her administration, and may join the sureties on her official bond as defendants, if he desires to hold them accountable for her defaults; but the administratrix and her husband can not, under any circum-

[Dowty v. Hall.]

stances, join with him as complainants in a bill against her sureties; nor can her husband be made the next friend of the infant in the bill.

3. *Multifariousness.*—Generally, the administration in chief of an intestate's estate, and the administration *de bonis non* by another person, are distinct trusts, the settlement of which can not be sought in one suit; but, whether all the unsettled matters of the estate may not be united and settled in one suit, at the instance of the sole heir and distributee, where the administrator *de bonis non* is personally liable for the unauthorized acts of the administratrix in chief, whose agent he was while imbecile, and the accounts of the two administrations are complicated, presenting facts which would give the infant a right of election to ratify or disaffirm, is not decided.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 25th August, 1885, by "William Dowty, a minor under the age of fourteen years, and Cybele Sandford, a lunatic, both suing by William Sandford as their next friend, and said William Sandford; against John W. Hall as administrator *de bonis non* of the estate of Stephen Dowty, deceased, and George Brown, W. W. Jones, Duval W. Weeks, Henry Dietrich, and Chess Corley & Co., a partnership or corporation doing business by that name and style in Mobile, Alabama;" and sought, principally, a settlement and distribution of the estate of said Stephen Dowty, deceased, who was the father of said William Dowty. Stephen Dowty died intestate, in Baldwin county, Alabama, some time during the year 1878, leaving a widow and only child, and possessed of a considerable estate, which consisted chiefly of a large tract of pine lands, containing from seven to nine thousand acres. In November, 1879, letters of administration on his estate was granted by the Probate Court of Baldwin to the widow, Mrs. Cybele Dowty; and she thereupon gave bond, with George Brown, W. W. Jones and T. G. Wilder, since deceased, as sureties, and entered on the discharge of the duties of the administration. The administratrix continued to reside on the homestead lands, and she proceeded, "without any order or authority of court, to open and establish a turpentine plantation and distillery on said pine lands, boxing the trees, employing hands, selling turpentine, borrowing money and obtaining goods on credit, procuring supplies and advances from merchants in Mobile, conducting a store, and managing the whole business as if he had full authority over the estate as owner;" making large profits from the sales, it was alleged, paying debts and expenses incurred, supporting herself and child (said William Dowty), her father, sister and brother, John

[Dowty v. Hall.]

W. Hall, and doing many acts which, though unauthorized, a court of equity would sanction and approve. In this conduct of the business, John W. Hall acted mostly as her clerk and agent; no separate accounts were kept; there was no allotment of dower to the widow, and no allotment of homestead or other exemptions to her and her infant child; and only a court of equity could determine to what extent her acts were beneficial to the estate, or make an election for the infant in the matter of the unauthorized acts.

In November, 1882, the administratrix married William Sandford, and the business of the estate was conducted by them in the same way. In April, 1884, Mrs. Sandford became a lunatic, and was sent to the asylum at Tuskaloosa in September, 1884, where she was when the bill was filed; but no guardian was appointed for her. In July, 1884, John W. Hall was appointed administrator *de bonis non* of said estate, and gave bond with said George Brown and W. W. Jones as his sureties; and he continued to carry on the business in the same loose manner, making payments on debts contracted by the administratrix in chief, contracting new debts, and committing many unauthorized acts. An account had been contracted by the administratrix with Chess Corley & Co., which was continued by the administrator *de bonis non*, partial payments being made from time to time; and an account as to these matters was prayed against them. In December, 1880, the administratrix obtained from the Probate Court an order to sell some of the lands of the estate for the payment of debts, and Henry Dietrich became the purchaser at the sale; but the bill alleged that the proceedings were void for want of jurisdiction, and sought to charge said Dietrich with the rent, or value of the use and occupation, and with the value of the trees cut and used or sold by him. It was alleged, also, that the administrator had made application to the Probate Court for an order to sell the remaining lands for the payment of debts, but the application did not contain the necessary jurisdictional averments; and that he had also made application for the final settlement of his own administration, and of the administration in chief, but had suffered the latter to abate. Many particular acts of waste or maladministration were specified, and it was alleged that the accounts of the two administrations were so complicated and involved that neither could be settled in the Probate Court, and only a court of equity could grant adequate relief.

[Dowty v. Hall.]

The chancellor sustained a demurrer to the bill, on account of the misjoinder of Chess Corley & Co., Dietrich, and others, and so far as it sought a settlement of the administration in chief; but held that it contained equity so far as it prayed a settlement of Hall's administration. The complainants appeal from this decree, and here assign as error the sustaining of the demurrer.

R. Inge Smith, for the appellants.

Anderson & Son, *contra*.

STONE, C. J.—When Mrs. Cybele Dowty intermarried with William Sandford, she being at the time administratrix of the estate of Stephen Dowty, her deceased husband, he, the said William, became thereby co-administrator with her, and liable for any act of administration she performed afterwards.—2 Wms. Ex'rs, 6 Amer. Ed., bottom page 966.

William Sandford having the powers, and resting under the liabilities of his wife, Cybele, neither he nor his wife was a proper party complainant, in a suit which seeks to charge her sureties for a *devastavit* committed by her; nor can her sureties, under any circumstances, be made to account to her for any default she may have committed. Nor should William Sandford be allowed to prosecute this suit as the next friend of William Dowty. Their rights and interests, according to the averments of the bill, are antagonistic, and they should not be co-complainants.

Mrs. Sandford having ceased to be administratrix, it would seem that nothing remains but to bring her administration to a settlement. That can be done in the Chancery Court, at the suit of William Dowty, sole next of kin of Stephen Dowty, her intestate. To such proceeding both Mrs. Sandford and her husband are proper parties defendant, and her sureties may also be made defendants, if it is desired to hold them accountable for her *devastavit*.

Mrs. Sandford's administration in chief, and Hall's administration *de bonis non*, are distinct trusts, and their settlement should not be sought in one suit, in the shape the present proceedings are made to assume.

Many other matters are brought into this suit, which are not germane to the settlement of Mrs. Sandford's administration, but we will not further particularize. The chancellor

[McAbee v. Parker.]

committed no error in his decretal order, of which the appellants can complain.

We have said above, that the two administrations of Mrs. Sandford and her brother, John W. Hall, can not be brought into one suit, framed as the present one is. We will not say that, in a proper suit, instituted in the name of the infant heir, with a disinterested next friend, the entire, unsettled matters of this estate can not, in one suit, be brought into the Chancery Court, and there finally adjusted. If the averments of the present bill be true, each of the administrations has been a series of unauthorized acts, which, in many instances, may be classed as *devastavits;* and taking the averments to be true, William Sandford is responsible for many of the errors into which his wife fell, after her intermarriage with him. Possibly, too, John W. Hall has fastened personal liabilities on himself, by aiding his sister in some of her unauthorized acts of administration. Upon these questions we raise inquiries, without intending to decide them. Possibly, the affairs of the estate have become so complicated, that the services of a receiver would both facilitate and economize its adjustment. Should such course be advised and pursued, the Chancery Court, in its guardianship and care of the infant, will determine in what matters unauthorized acts shall be ratified, and to what extent suits shall be instituted, in enforcing the rights of the minor. A severe course should not be pursued, unless it is apparent that there has been dishonest, willful, or reckless maladministration. But, as we have said, we do not advise anything in reference to ulterior proceedings.

Affirmed.