[Swope, et al. v. Swope.]

# Swope, *et al. v.* Swope.

*Bill to Remove an Estate from the Probate to the Chancery Court and for Final Settlement.*

(Decided Feb. 1, 1911.   Rehearing denied May 5, 1911.
55 South. 418.)

1. *Courts; Priority of Jurisdiction; Settlement of Estate.*—As Probate and Chancery courts have concurrent jurisdiction of the settlement of an estate, the court first acquiring jurisdiction should be allowed to continue unless some special reason arises for equitable interference.

2. *Infants; Next Friend; Removal.*—While any one can act as next friend for an infant in bringing a suit, and while it requires no authority from the court to bring such suit, the court may and should revoke the authority of the next friend when it appears that he is not a proper party to prosecute the suit.

3. *Same; Party.*—While a next friend is not technically speaking a party to a suit, he is a party in the contemplation of the statutes, and the practice of courts as to the conduct of the suit.

4. *Actions; Same Person as Plaintiff and Defendant; Sale of Infant's Land.*—An administrator could not as next friend of his infant ward prosecute a suit chiefly against himself both as administrator and as his guardian for the sale of lands of an estate.

5. *Executors and Administrators; Sale of Lands.*—Under sections 2619, 2620 and 2621, Code 1907, a sale is authorized only at the suit of the personal representative, and not at the suit of an heir or legatee, and hence an infant heir could not by next friend maintain a bill to have land of the estate sold for distribution.

(McClellan, J., dissenting.)

APPEAL from Lawrence County Court.

Heard before Hon. W. H. SIMPSON.

Bill by Carter Swope, pro ami against Clay Swope and others as guardians, etc., to remove an estate from the Probate to the Chancery court, and to wind up the estate. From a decree for complainant respondent appeals. Reversed and remanded.

KIRK, CARMICHAEL & RATHER for appellant. The probate and chancery courts have concurrent jurisdic-

tion in the matter of estates, and the court first taking jurisdiction should retain it, unless cause for equitable interference should arise.—*Warren v. Lewis*, 53 Ala. 622; *Ligon v. Ligon*, 105 Ala. 464; *McNeil v. McNeil*, 36 Ala. 115. After an administration has been pending more than eighteen months the distributees have a prima facie right to ask for a settlement.—*Hooper v. Smith*, 57 Ala. 557; *Cook v. Cook*, 69 Ala. 294. There is no privity between a resident and a foreign administrator. The doctrine is the same where the same person is administrator in both States.—*Johnson v. McKinnon*, 129 Ala. 226; *Jefferson v. Beard*, 117 Ala. 436. It is not necessary that settlement should be made in a chancery court because of the fact that the administrator of the estate and guardian of the infant distributee is the same person.—Section 2684 Code 1907. The purchase of the notes and mortgages on a tract of land belonging to the estate does not bring about any matter of complication or special equity.— *Moore v. Winston*, 66 Ala. 296; *Shackleford v. Bankhead*, 72 Ala. 476; *Draper v. Draper*, 64 Ala. 547. The Tennessee claim not having been filed against the Alabama estate is barred and is not a charge upon the property.—Section 2667, Code 1907. It therefore follows that the demurrers to the bill should have been sustained. The motion to dismiss for want of equity should also have been sustained.—*Tenn. C., I. & R. R. Co., v. Hayes*, 97 Ala. 209; 2 Johns Chan. 542; I. N. Y. Chancery, 482; 22 Cyc. 631; Pom. Equity. Secs. 1305, 1307 and 1309.

C. M. SHERROD and E. W. GODBY, for appellee. The filing of the bill by Carter Swoope, through his general guardian and next friend, rendered him the ward of the court whose jurisdiction over him thereby attached;

[Swope, et al. v. Swope.]

giving to the court a general superintendency and control over his affairs.—3rd Ed. Pomeroy's Eq. Jurisprudence, Sec. 1305; *Proctor v. Scharpff*, 80 Ala. 229-230; *Rivers v. Durr*, 46 Ala. 422; *McGowan v. Lufburrow*, 14 Am. St. Rep. 181. As there had never been any removal or resignation of the guardian it was impossible that the probate court could have had any sort of jurisdiction over the final settlement of his accounts.— *Lewis v. Allred*, 57 Ala. 632; *Glass v. Glass*, 76 Ala. 371; *Lee v. Lee*, 67 Ala. 419. The knowledge or consent of the infant to file a bill in his name by his next friend is entirely immaterial; upon suggestion the court will investigate whether it be to his interest to proceed with the bill or whether the next friend is a fit and proper person to champion his cause.—Tyler on Infancy, Sec. 139, P. 204 and 205 and Sec. 138, P. 204; Sims Chancery Practice, Sec. 64. E. C. Swoope's dual capacity as guardian and administrator necessitated the exercise of jurisdiction by the chancery court over his accounts in both capacities, in order in each instance to award the proper charges and credits, and to fix his liability in each capacity.—*Johnson v. Porterfield*, 43 South. 231. The bill of Carter Swoope, an infant and distributee of the estate, was sufficient to confer jurisdiction upon the chancery court, even if it had stated no ground of equitable jurisdiction.—*Hurt v. Hurt*, 47 South. 262; *Pearson v. Dorrington*, 21 Ala. 176; *Glenn v. Billingslea*, 64 Ala. 345; *Baker v. Mitchell*, 109 Ala. 490. It is impossible for the jurisdiction of the probate court to attach to the final settlement of the administration until the administrator has filed his accounts and vouchers for settlement and until the date has been set for the hearing and passing upon the same.—*Ligon v. Ligon*, 17 South. 90, 105 Ala. 460; *Glenn v. Billingslea*, 64 Ala. 345; *Gamble v. Jordan*, 54 Ala. 432; *Dimmick v. Stokes*, 43 South. 854; *Hurt v. Hurt*, 47 South. 260. The settlement of the Tennessee ancillary administration did not deprive the adminis-

trator of the right to resort to Tennessee lands to pay any judgment rendered against him after said settlement, in a suit brought against his intestate there which was pending at the date of said settlement; and this feature renders it equitable to withhold sufficient Alabama funds to meet such prospective judgment.—*Reynolds v. Reynolds,* 11 Ala. 1026; 18 Cyc. 634-635, and 670-671; *Sellars v. Smith,* 11 Ala. 265. The administrator is entitled to credit for the Alabama funds invested in the unmatured Sledge & Norfleet notes to enable him to advantageously dispose of the intestate's equity in the Mississippi plantation.—18 Cyc. 1140; 634-635. The right to reimbursement for the saving to the estate and the right to hold Annie responsible for personal assets received by her from Alabama is an additional ground of equity.—*Stewart v. Stewart,* 31 Ala. 212-213; *Bellamy v. Thornton,* 103 Ala. 104; *Spindle v. Blakeney,* 144 Ala. 196; 18 Cyc. 634-635. The estate and the parties and the administrator all alike constitute a unity and the equity of the domiciliary administration has jurisdiction.—18 Cyc. 670-671; *McNamara v. Dwyer,* 32 Am. Dec. 629; *Greenhood v. Greenhood,* 29 South. 300; 18 Cyc. 1248; *Cureton v. Mills,* 36 Am. Rep. 702 to 711.

MAYFIELD, J.—William C. Swoope, a resident of Lawrence county, Alabama, died intestate February 17, 1907, leaving four minor children, Annia, Temple, Clay and Carter, as his sole heirs. He left a considerable estate in Alabama, Mississippi and Tennessee, but was largely indebted. Edgar C. Swoope, a brother of intestate and main actor in this suit, was appointed administrator of the estates in all three of the states, and guardian of the wards and their estates in Alabama. The letters of administration and guardianship were

granted by the probate court of Lawrence county, Ala., and the estate of the intestate in Alabamaa was being administered in that court, as well as the estates of the wards. Annie, the oldest of the children, became of age October 26, 1908, and on the 29th of March, 1909, 18 months having elapsed from the granting of the letters of administration, she filed a petition in the probate court of Lawrence county to compel the administrator to make a final settlement of the estate; and that court entered an order directing the administrator to file his accounts and vouchers for a final settlement.

The administrator appeared and filed objections, upon various grounds, to then making final settlement; and the consideration of his objections was several times continued by the court. While this proceeding was thus pending, the administrator filed a petition in the probate court, to sell lands belonging to the estate of his intestate, which petition was resisted by all the heirs. While both of these proceedings was thus pending in the court, the minors, acting through Annie, filed a petition in the probate court, asking that the administrator, who was their guardian, be removed from the guardianship of their property. Soon after this, the administrator, acting as next friend of the youngest child, filed in the chancery court of Lawrence county a bill against himself, as administrator and as guardian and the other children and heirs, seeking to remove the administration of the estate from the probate court into the chancery court.

The administrator, as such, answered this bill filed by himself as next friend, made his answer a cross-bill against all the children including his ward, and sought to enjoin the proceedings in the probate court, instituted to compel him to make a final settlement of the decedent's estate and of his guardianship of the chil-

11—173

dren's estate, and to remove the same into the chancery court for settlement there; and also sought an order of the court directing that all of the lands of the estate in Alabama be sold for distribution among the heirs. The children, including Carter, the one for whom the administrator had filed the original bill as next friend, by their attorney and guardian ad litem, demurred to the original and cross-bills and filed a motion to dismiss same, setting up facts which were not stated in the bills, showing that the probate court had taken jurisdiction to finally settle the estate of the decedent; and prayed the removal of the guardian, and that he be required to make final settlement of his guardianship before the filing of the bill.

Probate and chancery courts are given concurrent jurisdiction of the settlement of estates of decedents, and the court first acquiring jurisdiction should be allowed to continue in the settlement unless (the case being in the probate court) some special reason arises for equitable interference. This is always true as to suits to remove, filed by the personal representative, or any person other than the heir, distributee, legatee or devisee. And, after the probate court has acquired jurisdiction for the special purpose of final settlement of the pending administration, there can be no removal into chancery at the suit of the heir or distributee except upon some ground of exclusive equity cognizance, or it be shown that the powers of the probate court are inadequaate.—*Ligon v. Ligon*, 105 Ala. 17 South. 89.

While the bill in this case is technically filed by one of the heirs and distributees, who is not required to show special equities as against the personal representative or creditors, yet, in fact, it is practically filed by the personal representative. While the infant is the real party in law, and the next friend is only the nomi-

nal party, yet it is the next friend—and not the infant—
who decides upon the policy and the propriety of the lit-
igation, and who selects and determines the course of
the litigation, subject of course to the supervision of
the chancellor.   So far as the policy of propriety of
maintaining this suit is concerned, it is and was de-
termined by the personal representative, and not by the
infant heir.

The undisputed facts in this record show that the
administrator was not a proper person to prosecute this
suit as next friend for the infant, Carter.   His inter-
ests in the whole matter were adverse and antagonistic.
As the next friend for the infant, he files the bill against
himself and others; and then answers his own bill and
makes it a cross-bill against the complainant, his ward
and client, and the other respondents to the original
bill.   The rights of the infant could not be properly rep-
resented and protected in such a proceeding.

While any one can act as next friend for an infant,
in bringing a suit, and while it requires no permission or
authority from the court to so bring such a suit, yet the
court can and should revoke the authority of a next
friend, when it appears—as it does in this case—that he
is not a proper person to prosecute the suit, whether
from incompetency or from having interests conflicting
with those of the infant.—*Barwick v. Rackley*, 45 Ala.
218, 219; *Dowty v. Hall*, 83 Ala. 168, 3 South. 315.   See
5 Port.

It is said in *Barwick's Case, supra*, that "on a proper
application, which may be made by the infant, by a
next friend, the general guardian, or any near relative
of the infant, the court will institute an inquiry whether
the suit is for the benefit of the infant, or whether it is
for his interest that it should be prosecuted by the per-
son named as next friend; and if, on such inquiry, it

shall appear that the suit is not for the benefit of the infant, or that it is not for his interest that the suit should be prosecuted by the person named as next friend, in either case the court would order the proceedings to be stayed; and in the latter case will remove the next friend and appoint another in his stead." Page 219, 45 Ala.

The facts in this case are similar to those of *Dowty v. Hall, supra,* and some of the purposes of the bills in the two cases are the same. In that case, the court, speaking through Stone, C. J., after pointing out some other defects in the bill, said: "Nor should William Sandford be allowed to prosecute this suit as next friend of William Dowty. Their rights and interests according to the averments of the bill are antagonistic, and they should not be co-complainants."—83 Ala. 168, 3 South. 317.

For much stronger and more convincing reasons in this case, E. C. Swoope should not be allowed to prosecute this suit as next friend of his infant ward, when the suit is chiefly against himself, both as administrator and as guardian. This record presents the anomalous condition of one person instituting a suit in equity in two representative capacities. This condition appearing affirmatively on the face of the proceedings, the chancellor should not have allowed the suit to proceed as far as it has done. While there is no statutory inhibition against any one person's acting as next friend for another, and while, as before said, the next friend is not the real party, yet it is incongruous that the same person should direct and conduct both the prosecution and the defense of the same suit in a court of either law or equity, no matter in what capacity he may appear. Especially is this true when such person is necessarily liable to the person whom he represents, as to both the subject-matter and the result of the suit.

It was not necessary in this case to institute any inquiry as to the propriety of E. C. Swoope's representing the infant, Carter Swoope, as next friend, for the reason that the bill of complaint affirmatively showed that he was not a proper person. The interest of the next friend and that of the ward or client were directly conflicting as to all relief or redress sought by the bill. The chancellor should have at once removed the next friend, and appointed another in his stead. The chancellor in his opinion says that he will in the future substitute another next friend for the complainant if it is necessary; but he should have done this at once upon the first hearing. Some of the evils of this delay or failure are shown by the subsequent proceedings of the suit. The chancellor, of course, had to appoint a guardian ad litem to defend for the infant, Carter, as to the cross-bill filed against him by his friend and guardian. This guardian ad litem, who must be presumed to be impartial and to properly represent the interest of the infant, answered and demurred to the cross-bill. In this answer he denied all the facts set up in the original and cross-bills, which are claimed to give them equity. To further confuse matters, we find the guardian ad litem of Carter Swoope both denying and demurring to the original bill filed by Carter Swoope. This infant by one of his representatives is affirming a certain state of facts, and by his other representative is denying these same facts and affirming the contrary. How can any court proceed correctly and certainly in such a state of the pleadings? How can the court properly protect the rights of such infant when it is so represented?

While a next friend is any one who will undertake to prosecute the suit of an infant or person under legal disability, and is not, technically speaking, a party to the suit, yet he is a party within the contemplation of

the statutes, and the practice of courts, as to the conduct of the suit.—*Thomas v. Safe Deposit Co.,* 73 Md. 451, 21 Atl. 367, 23 Atl. 3.

The original practice as to the next friend seems to have been that the next friend and the infant went before the judge at chambers, in person, or presented a petition to him, praying that the person intended be assigned by the judge as the infant's prochein ami. The judge, if he thought the proposed person a proper one, issued a fiat to the clerk, on which the clerk drew up a rule admitting such person to sue in the particular case mentioned, as the next friend. This ancient and formal practice, however, has become obsolete; and the next friend now sues in any case without previous permission of the court or of the infant. But the reason still exists that the next friend should be a proper person to prosecute the suit. He should be competent and should have the interest of the infant at heart, and his own personal interest should not conflict with or be opposed to the interest of the infant. It is just as necessary that a next friend should be personally disinterested in the result of the infant's suit as it is that a guardian ad litem should be; the only difference of function being that the one prosecutes, and the other defends, for the infant. It is true that we have statutes regulating the appointment of guardians ad litem and none as to next friends; but the importance of having proper persons is no greater in the one case than in the other. The statute as to the appointment of guardians ad litem prohibits even the suggestion of a person, as such, by the adverse parties or their attorneys. Code 1907, § 4484. When the law thus regards the rights of the infant, when defending, with such jealousy, surely it ought not to allow the prosecution of the infant's rights to be conducted by the same person who is defending

[Swope, et al. v. Swope.]

against such rights. That part of the original and cross bills which seeks to sell the lands of the estate of the intestate is wholly bad and subject to the demurrers. There is no pretense that the sale is necessary to pay the debts of the estate, but the contrary is alleged. In fact, the specific purpose of the sale is alleged to be a distribution among the heirs.

(5)  The statutes authorizing the sale of lands of the estate of a deceased person as a part of the administration of the estate are sections 2619, 2620 and 2621 of the Code, respectively, as follows:

"Sec. 2619. * * * Sale for payment of debts when there is a will.—Lands may be sold by the executor, or by the administrator, with the will annexed, for the payment of debts, when the will gives no power to sell the same for that purpose, and the personal estate is insufficient therefor.

"Sec. 2620. * * * Sale in case of intestacy.—In case of intestacy, lands may be sold by the administrator for the payment of debts, when the personal estate is insufficient therefor.

"Sec. 2621. * * * Sale for division.—Lands of an estate may be sold by order of the probate court having jurisdiction of the estate, when the same cannot be equitably divided among the heirs or devisees, when any adult heir or devisee files his written consent that the land be sold."

Here it is not averred that the personal property is insufficient to pay debts, without which averment and proof there could be no sale to pay debts. These statutes as to the administration of estates only authorize the land to be sold at the suit of the personal representative, and not at the suit of an heir or legatee. Sales of lands are thus made as part of the administration of the estate. The original bill in this

[Swope, et al. v. Swope.]

case professes to be filed by an infant heir against the
person representative et al., and, of course, the infant
heir in such bill cannot seek to have the lands sold for
distribution.   His right to maintain a bill for the sale
of the lands in question would be under the statutes as
to sales for partition, and not under those for the ad-
ministration of the estate of the deceased person. While
the cross-bill is by the personal representative, the prop-
er party to sell lands of the estate, it shows no reason or
necessity therefor, and makes no attempt to show that
an adult heir or devisee consented to the sale, as is re-
quired by the statute, but, on the contrary, shows that
the only adult heir was opposed, and objected to the
sale.   In other words, it seeks to have the lands sold
as  a  part of the administration of the estate in express
violation of the statute.   It may be that, when the chan-
cery court removes the next friend and appoints a suita-
ble person to act in such capacity, such substituted next
friend may not deem it to the interest of the infant to
prosecute the main suit.

For the error in overruling the demurrers to the origi-
nal and cross-bills, the decree is reversed and the cause
is remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON, ANDERSON, SAYRE, and
SOMMERVILLE, J. J., concur.

McCLELLAN,   J.—(dissenting).—The   chancellor
should not be put in error for overruling the demurrer
of the guardian ad litem of Carter Swoope to the origi-
nal bill of Carter Swoope, for the obvious reason that a
party cannot demur to his own pleading.   Nor can the
chancellor be put in error for overruling the motion of
the guardian ad litem of Carter Swoope to dismiss Car-

ter Swoope's own original bill for want of equity; and
so, for two reasons: First, motion to dismiss for want
of equity was "abolished" by Code 1907, § 3121; second,
a party cannot, as in case of demurrer, before stated,
thus invoke the court to test his own pleading. Again,
no appeal lies from an interlocutory decree overruling a
demurrer to a cross-bill.—*Bickley v. Bickley,* 129 Ala.
403, 29 South. 854; *Summer v. Hill,* 157 Ala. 230, 47
South. 565; *Herndon v. Gilreath* (mem.) 165 Ala. 669,
51 South. 601. When review may be had of such ruling
is pointed out in *Bickley v. Bickley,* and in *Summer v.
Hill,* namely, upon appeal from the final decree in the
cause. Accordingly the assignment of error from 33
to 47, inclusive, invoking review of the ruling on the
demurrer to the cross-bill, "cannot    *    *    *    be consid-
ered."—*Summer v. Hill,* 157 Ala. 233, 47 South. 566.
So it may be just here suggested that the majority are
in error in pronouncing erroneous, and reversing the
chancellor for "overruling the demurrers to the    *    *    *
cross-bills."

This process of elimination, which seems to the writer
to be incontestable, winnows the review, on this appeal,
to the two questions: (a) Whether the demurrer to the
original bill (of respondents other than Carter Swoope
whose bill it was) should have been sustained for want
of equity therein; and (b) whether the demurrer, taking
objection to E. C. Swoope's serving as next friend to
Carter Swoope in Carter Swoope's original bill, was, by
the chancellor, erroneously overruled. If E. C. Swoope
was competent, as next friend of Carter Swoope, to pre-
sent the original bill, it is clear that the original bill
possessed equity to invite the removal of the administra-
tion of the estate in which Carter Swoope was one of
the heirs from the probate into the chancery court.
Where the probate court has not taken jurisdiction for

final settlement of the estate (and it had not in this instance)' an heir's bill to remove the administration from the probate court possesses equity, without showing any other lead to invoke that jurisdiction. If perchance the heir's bill should pray for relief, in the course of administration of the estate, not grantable by the chancery court, that would not, could not, denude his bill of the equity inhering in his (heir's) right to remove the administration. This proposition finds apt authority in *Bromberg v. Bates,* 112 Ala. 363, 20 South. 786 (the decision, on this matter, being summarized in the first head note), and in *Bresler v. Bloom,* 147 Ala. 504, 41 South. 1010. The decision in *Kirkbride v. Kelly,* 167 Ala. 570, 52 South. 660, may be opposed to the doctrine underlying the rulings in *Bromberg v. Bates* and *Bresler v. Bloom,* but that decision does not take account of those cases, and hence does not overrule them. Upon reason, principle and authority, in the particular under consideration, *Bromberg v. Bates* and *Bresler v. Bloom,* do not admit, it would seem, of question of their soundness. The nature, office and purpose of a prochein ami is amply yet accurately amply stated in *T. C. I. & R. Co., v. Hayes,* 97 Ala. 201, 209-210, 12 South. 98, 102: "In theory a prochein ami is an officer of the court in which a minor sues by him. His only functions are to put his capacity to sue in the place of the infant's capacity, and thus set the machinery of justice in motion. *The court is not asked to pass upon any right of his, for he has no rights in the premises,* but only to determine the claims of the minor which he *perfunctorily* brings before it. The character of the necessity for his appearance marks the limitations of his powers. * * * The next friend has no interest in the result of the proceeding. * * * His being an officer of the

court is basis for the court's powers over him in the litigation." (Italics supplied).

Will demurrer lie to test the competency of a next friend, an officer of the court with powers, as defined in the case quoted, limited to the necessity for his appearance? That that inquiry may be instituted on proper application "by the infant of a next friend, the general guardian, or a near relative," is, of course, well recognized.—*Barwick v. Rackley, pro ami,* 45 Ala. 215; *Bethea v. McCall,* 3 Ala. 449; *Hayes' Case, supra; Railroad v. Hanlon,* 53 Ala. 70, 82; 22 Cyc. p. 662 et seq. If it appears that the suit is not for the benefit of the infant, or that the named next friend should not prosecute the suit, the court will stay the proceeding; and, in the latter alternative, remove the named next friend and appoint another.—Authorities supra. The mere statement of this approved practice as well as the purposes to be subserved by the inquiry denies, in the writer's opinion, any possibility of recourse to demurrer to test the matter, to invite the inquiry. On demurrer, no investigation of fact, outside the averments of the pleading assailed, is possible. On the "application" contemplated by the long approved practice, fully stated in *Barwick v. Rackley,* opportunity to present and have considered matters dehors the pleading, as well as the pleading itself, is afforded. But, aside from this approved practice, the consequence of suffering demurrer to supplant this practice demonstrates the total inappropriateness of demurrer to avail to test the competency, etc., of the next friend. After demurrer sustained to an original bill, even on a single ground, the litigation cannot proceed, unless it is amended to avoid the points taken by the demurrer and upon which the demurrer is sustained. —*Kinney v. Reeves & Co.,* 139 Ala. 386, 36 South. 22; *Coleman v. Butt,* 130 Ala. 266, 30 South. 364. In the

closing lines of the controlling opinion, it is said: "For the error in overruling the demurrers to the original and cross-bills the decree is reversed and the cause is remanded." But this is also said in the opinion of the majority: "It may be that, when the chancery court removes the next friend and appoints a suitable person to act in such capacity, such substituted next friend may not deem it to the interest of the infant to prosecute the main suit." If the chancellor erred in overruling the demurrer objecting to the competency, etc., of E. C. Swoope as next friend, then upon the return of the cause to his court, ordinarily, usually, he must, in deference to the ruling here, sustain the demurrer. If that decretal order is entered, E. C. Swoope will be stricken as next friend; and, unless amended, the bill will not permit further procedure upon it.—*Kinney v. Reeves & Co., supra; Coleman v. Butt, supra.* So that in that view the quoted statement in the opinion that the chancery court may remove E. C. Swoope would seem to be entirely vain, since the sustaining of the demurrer will have immediately effected that. However, it may be well concluded from the opinion that since this court has not seen proper to itself sustain the demurrer the chancery court may first observe its suggestion of substitution of another next friend, and thus avoid the point of the demurrer in this particular. Whether this anomalous situation may be worked out consistently with orderly procedure and proper regard for the rights of the demurrants is not now to be anticipated. It would seem, however, aside from reversing the decree mentioned, that this court has merely advised in the premises without ruling to finality upon the demurrers.

If the decree here compels the chancery court to first sustain the demurrer to the original bill in its objection to the continuance of E. C. Swoope as next friend, it is

obvious that, unless amended, the original bill will not support further proceedings. Who may amend the bill? Surely, the court, of its own motion, cannot amend pleadings. The infant complainant, incapacitated to sue, certainly cannot perfect this imperfect pleading. While the court may "upon proper application" remove one prochein ami and appoint another instead, it cannot, first hand, furnish a next friend. It has no such uninvited initiative. Logically and ordinarily, sustaining a demurrer to an original bill, whereby the next friend is ejected from the cause, would operate to end the proceeding; there being no one to amend to avoid the effect of the demurrer. Such a consequence cannot, it seems to the writer, flow from any sound rule of procedure; and a rule of procedure that so concludes must in the writer's opinion be totally inappropriate. Apart from these considerations, the demurrer to the original bill in respect of objection to the competency, etc., of the next friend, was in my opinion properly overruled by the chancellor. Carter Swoope was not, as before stated, a respondent in the original bill; and hence his guardian ad litem appointed for him as one of the respondents to the cross-bill was, of course, without right to demur to the original bill, whatever objections he might have interposed to the cross-bill. May the respondents to the original bill assume by demurrer the protection of Carter Swoope (infant complainant in the original bill) from a next friend who, it is claimed, is antagonistic to the interests of Carter Swoope? It seems to the writer that the question admits of but one response, and that is in the negative. The relation to the original bill of the next friend is that of an officer of the court. No interest or right of his is litigable or determinable in the cause.—*T. C. I. & R. R. Co. v. Hayes, supra.* So the objection by the demurrant points alone to protecting

the infant complainant from an (alleged) antagonistically interested next friend. The demurrant is without concern, in any way, in that asserted danger to the complainant. If the relation between the interests of the complainant and of the next friend was as asserted, it could not affect in any degree or event the rights of the respondents. If existing, the asserted relation concerned the next friend and the complainant only. If existing, it was a matter that did not go to the perfection as to the parties or subject-matter of the original bill. The next friend is not a party to the cause.—*T. C. I. & R. R. Co. v. Hayes, supra.* Nor did the alleged antagonistic relation affect or bear upon the subject-matter of the original bill as far as the respondents were concerned; for no right or interest of the next friend was litigable as upon the original bill.

*Dowty v. Hall,* 83 Ala. 165, 3 South. 315, does not in my opinion, sustain the controlling opinion in the particular under consideration. In that case the statement of facts on page 168 recites: "The chancellor sustained a demurrer to the bill on account of *misjoinder* of Chess Carley & Co., Deitrich and others, and so far as it sought a settlement of the administration in chief; but he held that it contained equity so far as it prayed a settlement of Hall's administration. The complainants appeal *from this decree,* and here assign as error the sustaining of the demurrer." (Italics supplied.) As appears, the demurrer was sustained for misjoinder. That is not the matter involved or ruled upon in this appeal. Carter Swoope was the sole complainant in the original bill, so there could be no question of misjoinder. A full reading of the decision in *Dowty v. Hall* will emphasize its want of bearing on this appeal.

Upon the foregoing considerations, I am unable to concur in the opinion disposing of the appeal.