**FONG SIK LEUNG, as Guardian Ad Litem for Fong Gar Hong, Appellant,**

v.

**John Foster DULLES, as Secretary of State, Appellee.**

No. 13610.

United States Court of Appeals Ninth Circuit.

July 28, 1955.

Jackson & Hertogs, Joseph S. Hertogs, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, POPE, Circuit Judge, and BOLDT, District Judge.

DENMAN, Chief Judge.

Appellant, seeking to establish under 8 U.S.C. § 903, now 8 U.S.C.A. § 1503, that he is an American citizen born in China to an American citizen father, Fong Sik Leung, his guardian ad litem, appeals from a judgment of the district court dismissing his petition. The court relied upon F.R.C.P. 41(b).[1] Its ground of dismissal is the refusal of the guardian ad litem, who so happened to be appellant's alleged father, to submit to a blood test ordered before the case was set for trial, for both the appellant and the guardian under the purported authority of the provisions of F.R.C.P. 35.

The court's order reads:

"Upon motion made pursuant to Rule 35 of Federal Rules of Civil Procedure for Physical examination, including blood grouping tests, of plaintiff and his alleged father, the Court having on the 27th day of August, 1952, made and entered herein an order granting said motion.

"It is ordered that Fong Sik Leung and Fong Gar Hong report to Room No. 108, United States Public Health Hospital, 14th and Lake Streets, San Francisco, California, at 9:00 o'clock A.M., on the 3rd day of September, 1952, for said physical examination, including blood grouping tests."

The order fails to name any physician or physicians by whom the tests are to be made as required by F.R.C.P. 35(a), a matter considered infra.

The appellant submitted to the tests. The guardian personally did not report to the hospital and, on advice of counsel, refused to comply with the order.

I. *A suit brought by a minor party petitioner, suing through his guardian ad litem, is not a suit with two parties petitioning.*

The petition below better would have been titled by naming first the petitioner and having it read Fong Gar Hong, petitioner, by his guardian ad litem, Fong Sik Leung.

Appellant contends that the court wrongfully dismissed his petition to establish his United States citizenship

1. "(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits. As amended Dec. 27, 1946, effective March 19, 1948." 28 U.S.C.A.

through the paternity of his citizen father, by construing F.R.C.P. 35(a) as making his guardian ad litem, who happened to be his father, a second party petitioning, and dismissing because the guardian refused to obey an order to submit to a blood test. That rule provides:

"Rule 35. Physical and Mental Examination of Persons

"(a) Order for Examination. In an action in which the mental or physical condition of a *party* is in controversy, the court in which the action is pending may order *him* to submit to a physical or mental examination by a *physician*. The order may be made only on motion for good cause shown and upon notice to the *party* to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and *the* person or persons [physician] by whom it is to be made." (Emphasis supplied.)

It seems clear that there were not two parties to this 903 proceeding. The child petitioner is the only person seeking relief. The Guardian ad litem seeks none for himself. He is no more than the court's agent to aid the petitioner in seeking that relief. That here he is the child's claimed father is a mere happenstance. The guardian as well might be Patrick Riley born in Cork, Ireland, and recently admitted to citizenship. The fact that a guardian is subject to certain controls of the court no more makes him a party subject to the blood test than it does a party litigant's attorney, whose blood condition may be a relevant fact in the case.

A patent absurdity of the district court's construction of the Act is that, if in the pending litigation the minor attained majority and the guardianship automatically ceased without any act of the guardian, the order for the latter's blood test then could not be made. Such an automatic result is utterly unlike the withdrawal of one of two parties from the action. Only by the legerdemain of the prestidigitator can one have such a "now you see it and now you don't" result.

The above interpretation is apparent on the face of Rule 35(a). However, were it otherwise its necessary strict construction would require it.

II. *Absent F.R.C.P. 35, a federal court, in purely federal litigation, has no power to compel any one to submit to the procedure ordering a blood test, whether a party or a prospective witness. The rule creating de novo the obligation to submit should be strictly construed.*

That such power did not exist prior to the rule is held by the Supreme Court in Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734. That is a diversity suit for damages for negligence of the railroad causing bodily injury, commenced in the United States Circuit Court for the District of Indiana, a state having no settled law requiring such an examination. The Supreme Court, in holding the federal court had no power to compel Botsford to submit to surgical examination as to the extent of her injuries, stated at page 251, of 141 U.S. at page 1001 of 11 S.Ct., "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. As well said by Judge Cooley, 'The right to one's person may be said to be a right of complete immunity; to be let alone,'" and at page 252, of 141 U.S., at page 1001 of 11 S.Ct., "The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit it to the touch of a stranger, without lawful authority, is an indignity, an assault, and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and

upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country." Since it is a "sacred * * * right of every individual to [be] free from all restraint or interference of others, unless by clear and unquestionable authority of law" it is apparent that Rule 35 diminishing that sacred right should be strictly construed.

It is contended that the Botsford decision of 1891 is outmoded and is no longer the law controlling in such purely federal litigation. It cannot be that the widely stated constant increase in both adult and teenage murder and their crimes of rape and sadistic violence have so dulled the minds of the Justices that they no longer consider any such sacred right exists and that what was said of it in the Botsford case is to be forgotten as mere irrelevant twaddle. More recent decisions and the statement of the advisory committee respecting Rule 35 show the contrary.

The Supreme Court in 1900 in Camden, etc., Ry. Co. v. Stetson, 177 U.S. 172, 20 S.Ct. 617, 44 L.Ed. 721, holds the Botsford case is still the law for such federal litigation. There, in a diversity case, a state statute authorized a surgical examination and it was contended the statute did not apply in federal courts and hence the Botsford case made the examination unlawful. The Supreme Court, instead of holding the Botsford case no longer the law, holds that it is but does not apply in a diversity case where there is a state statute for such physical examination.

Again in 1941, the Supreme Court considered the Botsford case in Sibbach v. Wilson & Co., 312 U.S. 1, 11, 655, 61 S.Ct. 422, 85 L.Ed. 479. The question there was whether F.R.C.P. 35 was procedural in character and hence within the power of the Supreme Court to promulgate. If the Botsford case were then no longer the law and, in the absence of Rule 35, the district court had the power to order a physical examination of any one in any case, it is obvious the Court so would

have stated. To the contrary, in holding that the rule is procedural, it states at page 11 of 312 U.S., at page 425 of 61 S.Ct., "In the Botsford case an action *to* recover for a personal injury suffered in the territory of Utah was instituted in the United States Circuit Court for Indiana, which refused to order a physical examination. This court affirmed, on the ground that no authority for such an order was shown. There was no suggestion that the question was one of substantive law. *The court first examines the practice at common law and finds that it never* recognized such an order. Then, acknowledging that a statute of the United States authorizing an order of the sort would be valid, the opinion finds there is none. Thus the matter is treated as one of procedure, for Congress has not, if it could, declared by statute the substantive law of a state."

Furthermore the Advisory Committee on Rules in 1934 recognized the continuing validity of the Botsford case, stating "In Union Pacific Ry. Co. v. Botsford, 1891, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734, it was held that the court could not order the physical examination of a party in the absence of statutory authority * * *." and "Such authority is *now* found in the present rule [35] made operative by the Act of June 19, 1934, c. 651, U.S.C.A. Title 28, § 2072 * * *." (Emphasis supplied.)

III. *The guardian, not a party, cannot be coerced by the court, by its order depriving the child plaintiff of his parent guardian ad litem if the latter refuses to submit to the blood test.*

It is obvious from the opinions of the Supreme Court, the latest in 1941, that only by statute or rule can *any one* be ordered to take a blood test. It would be absurd to contend that *any one not a party* may be so coerced while specifically providing in Rule 35(a) that only a party is subject to such physical examination. Under such a construction Rule 35(a) would become mere judicial jesting by the Supreme Court. By not amending the rule since adopting it in 1934, it is

clear that the Supreme Court still regards the Botsford case as controlling.

Hence it is equally absurd to contend, as in Judge Boldt's concurring opinion, that though the guardian is not a party, he may be coerced to give a blood test, by ordering that the infant will be deprived of his parent guardian, if the latter refuses to give the test. This would be but a roundabout evasion even if the contention could be effective. Obviously such a coercive order would be futile if it were made and the guardian were removed because he refuses to be coerced or if the guardian resigned. He then could not be summoned as a witness and compelled to give the blood test.

The adoption of Judge Boldt's assertion of the law in this regard would inflict a further wrong on the infant plaintiff. No party to this appeal has at any time contended that the guardian so could be coerced. To make such a decision de novo, without a brief or hearing, would violate the fundamental right of the litigants of this court. The right of the infant to have the contention stated in the brief of his opponent is given in our Rule 18. When so stated he is entitled to have it argued in the hearing of the appeal under our Rule 20. Certainly the legal profession would be shocked if we made such a decision out of clear air.

IV. *The district court lacked jurisdiction over the subject matter of the motion to compel the guardian to submit to the procedure of having his blood tested.*

Contrary to the contention that discussion of jurisdiction should be avoided, it is the primary duty of this court in every case to determine whether the district court had jurisdiction of the subject matter of the action of that court under consideration by this court. If it is lacking, this court has no more jurisdiction to entertain the merits of the court's decision than it would in an appeal from a divorce action attempted to be brought in a federal district court of one of the states.

What we are here concerned with is not whether the district court had jurisdiction of the § 903 action, which it obviously had. The question is whether the district court had jurisdiction of the subject matter of the blood test proceeding against a non-party, the decision on which led to the dismissal. The procedure there entertained attempts to compel the guardian to submit to a blood test as if he were a party within Rule 35(a). Since that rule covers only parties and not a guardian, there is no procedural right so to proceed against him. Absent such right, the subject matter of Rule 35(a) does not exist and such jurisdiction in the district court is lacking.

Since the district court lacked such jurisdiction of the subject matter of the procedure under Rule 35 there is no merit to the appellee's contention that the court had a discretionary right to make the order for the blood tests which the guardian should obey and wait the decision on appeal of its validity. The case of United States v. United Mine Workers, 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884 and Howat v. Kansas, 258 U.S. 181, 189, 42 S.Ct. 277, 66 L.Ed. 550, relied upon by appellee, expressly confine this contention to cases where there is jurisdiction of the subject matter and of the party.

Appellee also relies on Beach v. Beach, 72 App.D.C. 318, 114 F.2d 479, 131 A.L.R. 804. This case is clearly inapplicable. It was for maintenance of a child in which both the father and mother appeared and the court had jurisdiction of the subject matter. A question of the child's paternity was raised and the child became a party, suing by her next friend. The order for the child, a party, and the claimed father, a party, to submit to blood tests is no authority for the contention that the court had the power to compel the child to submit to a blood test if she had not been a party.

V. *Even assuming the guardian a party the order for the blood test of the guardian creates no jurisdiction in personam over the guardian to compel his obedience since it failed to name the physician who is to conduct it.*

This question is one of importance and should be considered because of the pendency of large numbers of § 903 cases

waiting trial brought by persons of claimed Chinese citizen fathers, where the father is the guardian ad litem.

The court's order of August 29, 1952, supra, purports to be authorized by Rule 35(a). It does no more than direct the guardian to go to a certain hospital. That rule requires the examination to be made by a "physician" and the order to "specify * * * the person or persons by whom [examination] is to be made." No such specification of the examining physician or physicians is made in the order. Under it, the examination as well could be made by persons, say scientists, not physicians. It is a much stronger situation than where an invalid order is made to a witness for the taking of his deposition at a given address without naming the notary.

The right to the names of one or more such physicians is to enable the litigant to protest to the court that the examining persons are incompetent or prejudiced, the latter on various grounds, here possibly against those of Oriental origin, as are many people in the Pacific States, which for so long sought to deny them the right to become citizens. In the failure to specify such physician or physicians, the district court had no jurisdiction in personam over the guardian to order him to proceed with the blood tests and hence erred in making the judgment of dismissal.

VI. *The question of the validity of the order is before us.*

The contention is made that appellant made no objection to the order for the blood tests. The contrary is shown by the transcript of the pre-trial proceedings on the motion for the order, filed in the appeal but omitted from the printed transcript. There through many pages appellant urged that the order should not be made, thus complying with F.R.C.P. 46.

It must be remembered that the question here is the plaintiff's claimed right to American citizenship of which the opinion of Judge Pope in Mar Gong v. Brownell, 9 Cir., 209 F.2d 448, 453 quotes the Supreme Court's statement in Kwock Jan Fat v. White, 253 U.S. 454, 464, 40 S.Ct. 566, 64 L.Ed. 1010 that " 'It is better that many Chinese immigrants should be improperly admitted than that one natural born citizen of the United States should be permanently excluded from his country.' "

No case could make more clearly applicable our holding that we will consider such fundamental manifest error, though no objection to it be made. National Labor Relations Board v. Red Spot Electric Co., 9 Cir., 191 F.2d 697, 699; Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037.

Returning the case for a hearing on the merits of the appellant's contention will permit him, sua sponte, to introduce evidence of the character of his father's blood determined by physicians of his own choosing.

The judgment is reversed and the district court ordered to entertain the proceeding.

BOLDT, District Judge (concurring in the result).

It seems advisable to state in some detail the reasons for my concurrence in reversal of the judgment and for my disagreement with much that is stated in Judge Denman's opinion.

Appellant's petition to the district court alleges that "for the purpose of this action Fong Sik Leung was appointed by the Court and now is the guardian ad litem of plaintiff, Fong Gar Hong, a minor"; that said minor is "the true and lawful blood son of Fong Sik Leung who is a citizen of the United States"; that said minor was born in China on February 7, 1935 as the issue of a lawful marriage; that the alleged father caused an application for issuance of a United States passport or travel document in behalf of the alleged son to be filed with the American Consulate at Canton, China, which application was refused; that Fong Sik Leung purchased a ticket for air transportation of the minor from Hong Kong to San Francisco; and that

the action of defendant Secretary of State in denying Fong Gar Hong documentation as a United States citizen was and is a denial to him of a right or privilege as a national of the United States. The answer admits that Fong Sik Leung is a citizen of the United States but denies that Fong Gar Hong is his true and lawful blood son.

Following joinder of issue defendant filed a motion under F.R.Civ.P. Rule 35 for an order directing the alleged father and son to submit to physical examination, including blood group tests. Such examination of both alleged father and son was directed by an order of the district court.[1] Fong Gar Hong appeared as directed and submitted to examination; Fong Sik Leung refused to do so. On motion of defendant based on F.R.Civ.P. Rule 41(b), a judgment dismissing the action was entered because "the alleged father, Fong Sik Leung, guardian ad litem in the present action, acting upon the advice of counsel, deliberately refused to comply with the order of the court." This appeal is from the judgment of dismissal.

The judgment of dismissal and the motion therefor refer only to Rule 41(b) which authorizes dismissal "for failure of the plaintiff * * * to comply with [the] rules or any order of court". Fong Sik Leung seeks no relief for himself in this action and is not a plaintiff, although incorrectly so designated by appellant's counsel in the title of the petition; therefore, Rule 41(b) is not applicable. F.R.Civ.P. Rule 37 sets out particularly and in considerable detail the actions which the court may take for failure of compliance with orders under Rule 35 and other rules pertaining to depositions and discovery. Rule 37(b) (2) provides:

"If any party or an officer or managing agent of a party refuses to obey * * * an order made under

Rule 35 requiring him to submit to a physical or medical examination, the court may make such orders in regard to the refusal as are just, and among others the following * * * (iii) an order * * * dismissing the action or proceeding or any part thereof."

The mistaken or inadvertent reference in the judgment to Rule 41(b) ought to be disregarded and the judgment treated as though it recited Rule 37(b) (2) as its basis.

Rule 35(a) refers only to physical examination of a *party*. Therefore, the first and controlling question presented in the case is whether Fong Sik Leung, alleged blood father of Fong Gar Hong and prosecuting this action for him as his duly appointed and acting guardian ad litem, was a "party" to the action within the meaning of that term as used in Rule 35(a).

 It has been long and well settled that the Federal Rules of Procedure must be given a broad and liberal interpretation so as "to secure the just, speedy, and inexpensive determination of every action" as provided by Rule 1. In 1941 it was so held for this circuit in Phillips v. Baker, 9 Cir., 121 F.2d 752, 754. In that much cited case which has been followed by other circuits, it was said:

"It should be stated at the outset that it is in keeping with the spirit of the new Federal Rules to interpret them liberally, just so long as the confines of the rules themselves are not transgressed."

The Fifth Circuit has well stated the matter in Fakouri v. Cadais, 147 F.2d 667, 669:

"The Rules of Civil Procedure clearly indicate a general policy to disregard technicalities and form, and to determine the rights of liti-

1. The order did not "specify * * * the person or persons by whom it [the examination] is to be made" as required by F.R.Civ.P. 35(a). On the appeal appellant did not assign error in this particular or urge same in the briefs or

argument. Under these circumstances and because the judgment is reversed and remanded, I do not think discussion of such apparent defect in the order is required.

gants on the merits. To this end the Rules are liberally construed."

In its broadest meaning the word "party" includes one concerned with, conducting, or taking part in any matter or proceeding, whether he is named or participates as a formal party or not.[2] In a variety of situations persons not named in cause title and not appearing in any formal capacity have been held to be "parties" or "a party to" litigation in which they were concerned or affected.[3] If the word "party" were considered only in its own broadest meaning it might well be held to include one in the situation of Fong Sik Leung under the particular circumstances of this case. The language of Rule 37(b) (2), expressly providing for sanctions, including dismissal, which may be applied if a party, or an officer or managing agent of a party, refuses to obey an order for a physical examination under Rule 35, seems to support that interpretation.

However, such meaning cannot be applied to the word "party" as used in Rule 35 if it appears from the history and context of the Rule that the Supreme Court did not so intend in adopting the Rule. Considering the matter in that light, it is my conclusion, not free from doubt, that the rule makers intended that only those parties whose physical or mental condition is directly in controversy in the particular action can be required to submit to examination in so far as Rule 35 is concerned.[4] Such conclusion is induced by the wording of the Rule as a whole and by the fact that prior to the Rule physical examination of a party could not be required by federal courts under Union Pacific Ry. Co. v. Botsford, 1890, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734. Considering the

2. "The term includes every party to an act. It is also used to denote all the individual, separate persons engaged in the act, * * *." Vol. II Bouvier's Law Dictionary Rawle's Third Revision, p. 2460.

"Party, A person concerned or having or taking part in any affair, matter, transaction or proceedings, considered individually. Parties. The persons who take part in the performance of any act, or who are directly interested in any affair, contract, or conveyance, or who are actively concerned in the prosecution and defense of any legal proceeding (cases cited)". Black's Law Dictionary, 4th Ed. 1275, 1278.

"Party, One concerned in or privy to a matter, as in the relation of accessory or confidant; as, he also was a *party* to the affair." Funk & Wagnall's Standard Dictionary, Twentieth Century Edition, p. 1287.

"Party, * * * in a more general sense, one indirectly so disclosed as being directly interested in the subject matter of the suit, or as having power to make a defense, control the proceedings, or appeal from the judgment; * * *." Webster's New International Dictionary, p. 1574.

"In a larger legal sense the term 'party' or 'parties' has been defined as any or all persons who have a right to control the proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from the decision, if an appeal

lies, * * * A 'party' has also been defined as 'ordinarily one who claims an interest in the subject of an action or proceeding instituted to afford some relief to the one who sets the law in motion against another person or persons;' one who appears as an actor in a litigation or proceeding and claims or asserts an interest in the subject matter thereof." 67 C.J.S., Parties, § 1, page 887.

"* * * a next friend may be regarded as a party for some purposes * * *." 43 C.J.S., Infants, § 106, page 273.

3. Theller v. Hershey, C.C., 89 F. 575; State v. Orr, 53 Idaho 452, 24 P.2d 679; Johnson v. State, 87 Ark. 45, 112 S.W. 143, 18 L.R.A.,N.S., 619; Courtney v. William Knabe & Co. Mfg. Co., 97 Md. 499, 55 A. 614; Thomas v. Safe Deposit & Trust Co., 73 Md. 451, 21 A. 367, 23 A. 3; Swoope v. Swoope, 173 Ala. 157, 55 So. 418; Barker v. Byars, 245 Ala. 223, 16 So.2d 504; Beach v. Milford Ice Co., 87 Conn. 528, 89 A. 181; Savage v. North Anson Mfg. Co., 124 Me. 1, 124 A. 721; see also Green v. Bogue, 158 U.S. 478, 479, 503, 15 S.Ct. 975, 39 L.Ed. 1061.

4. Whether the district court has express or inherent authority to require examination of persons in any other status or under any other rules or conditions is not involved in this case and does not need to be determined.

present judicial attitude toward the obligation of parties to reveal and not conceal truth concerning matters in issue in civil litigation, I do not think the Supreme Court today would follow either the rationale or rule of the Botsford decision.

Since the blood type and physical characteristics of Fong Sik Leung were not directly in controversy in this action it follows that Rule 35 was not applicable to him. Accordingly, his failure to submit to examination was not a violation of the Rule and did not justify a dismissal granted solely because of a supposed violation of the Rule.

 It does not follow from the foregoing that the portion of the order directing the guardian ad litem to submit to physical examination and blood test was void as beyond the power of the court or that the court was powerless to deal with the guardian ad litem for refusing compliance with the order. The guardian ad litem was appointed as such by the court and his continuing in that capacity was subject to the discretion and approval of the court. Neither Fong Sik Leung, nor any other asserted or actual parent, may claim to be a guardian ad litem of his minor child as a matter of right. A guardian ad litem is appointed as a representative of the court to act for the minor in the cause, with authority to engage counsel, file suit and to prosecute, control and direct the litigation. As an officer of the court the guardian ad litem has full responsibility to assist the court "to secure the just, speedy and inexpensive determination" of the action. The court has inherent power to require its appointed officers to render such assistance. No representative of the court, whether guardian ad litem, master, receiver or other officer has any right to continue in such capacity while hindering ascertainment of truth and deliberately withholding information important to the litigation. Any commitment or obligation that actually or apparently requires a guardian ad litem to withhold information the court orders divulged, will not justify the guardian ad litem continuing in such capacity while defying the court's order. It is out of keeping with the spirit and purpose of modern jurisprudence to permit an appointed officer of the court to serve two masters when their purposes and interests conflict.

 Fong Sik Leung, by complying with the order of the court, might have furnished information of importance in ascertaining the truth as to the vital fact in controversy, i. e., his blood relationship to Fong Gar Hong; indeed, the information supplied by him might have been determinative of the action.[5] If he proposed to continue as an officer of the court in the capacity of guardian ad litem he was obliged to comply with the order; otherwise he ought to have been replaced. Such action will still be available to the trial court in this particular case. If upon trial of the case Fong Sik Leung testifies as a witness, or appellant offers evidence as to the blood group type of Fong Sik Leung, and the trial court then either, orders his physical examination with blood test or draws an inference from his failure to submit to such examination and test, questions which are not now before us will arise as to which we should not now express an opinion.

---

5. When the blood of child and only that of asserted father are available for blood group tests a negative finding of paternity is possible in a low percentage of cases: first, where one has "AB" blood type and the other "O" type; second, where one has pure "RH Positive (cde)" type and the other pure "RH Negative." Since only 2% to 4% of the population have "AB" blood type and about 40% have "O" type the percentage of chance of excluding parentage in such instance would be around 1% to 2%. The incidence of pure RH Negative blood is about 10% generally and less among Orientals, making the chance of exclusion on that basis extremely remote. Excellent treatises on blood typing may be found in clinical pathology texts Legal Medicine by R.B.H. Gradwohl (C. V. Mosby Co., St. Louis 1954) and Medical Legal Blood Group Determination by David Harley (Grume and Stratton, New York, 1944).

POPE, Circuit Judge (concurring in the result).

My views of this case are in accord with those expressed by Judge Boldt in his concurring opinion.

I too think that it is unwise to predicate any conclusions in this case upon the assumption that the Supreme Court would now approve the rationale of Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734.[1] Implicit in Judge Boldt's opinion is the view, with which I agree, that no unfavorable inference should be drawn from the past refusals of Fong Sik Leung to submit to blood tests or to produce such evidence willingly or of his own motion.[2] He had the right to test the court's order as he has done here. As Judge Boldt has said the question of appropriate inferences based on future happenings is not now before us.

---

1. See Wigmore on Evidence, 3d ed., § 2220, Vol. VIII, pp. 190–191.

2. Wigmore on Evidence, § 285, Vol. II, p. 162.